FILED
JAMES BONINI
CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

10 SEP 15 PM 2:40

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

RUSBY ADAMS, JR,

LESLIE SCHELL,

DANIEL STEWART,

KEVIN JONES,                                       Case No. **2:10 cv 826**

Individually, and On Behalf of All                 Judge **JUDGE GRAHAM**
Others Similarly Situated,

                              Plaintiffs,          **MAGISTRATE JUDGE KING**

v.

ANHEUSER-BUSCH COMPANIES,
INC.

ANHEUSER-BUSCH COMPANIES
PENSION PLAN

ANHEUSER-BUSCH COMPANIES
PENSION PLANS APPEALS
COMMITTEE

ANHEUSER-BUSCH INBEV, N.V.

JEFF KARRENBROCK

                              Defendants.

## COMPLAINT

For their Complaint against Defendants Anheuser-Busch Companies, Inc., Anheuser-Busch Companies Pension Plan, Anheuser-Busch Companies Pension Plan Appeals Committee, Anheuser-Busch InBev, N.V., and Jeff Karrenbrock, Plaintiffs Rusby Adams, Jr., Leslie Schell, Daniel Stewart, and Kevin Jones, individually and on behalf of all others similarly situated, state as follows:

## Introduction

1.      Plaintiffs are salaried participants in the Anheuser-Busch Companies Pension Plan (the "Plan") and former employees within a "Controlled Group" of Anheuser-Busch Companies, Inc. ("ABC") companies.  InBev, N.V., a Belgian beverage company, acquired ABC in 2008, and began planning (even before the closing of the acquisition) to sell assets to pay for the transaction.  Plaintiffs worked at companies or plants that were subsequently sold in accordance with InBev's plan to sell assets.

2.      The Plan provides that a salaried participant "whose employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control" is entitled to an enhanced pension benefit that adds "an additional five (5) years of Credited Service" and "an additional five (5) years of age" to the benefit calculation, an enhanced amount that "shall in any event be at least fifteen percent (15%) larger" than the benefit to which the participant would have otherwise been entitled as of the date of termination.

2

3.     In 2009, Plaintiffs' employment with the Controlled Group was involuntarily terminated upon the sale of their employer or plant (sales that occurred within three years of the "Change in Control" – the InBev/ABC acquisition). Defendants, however, have denied Plaintiffs' enhanced pension benefit.  In fact, certain Defendants have been engaged in a course of conduct since before the InBev/ABC acquisition closed to misrepresent and deny the enhanced Plan benefit to Plaintiffs in contravention of the Defendants' fiduciary duties to the Plan's participants.

4.     Plaintiffs therefore assert claims for benefits and breach of fiduciary duty pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") to obtain the enhanced benefits to which they are entitled, plus pre- and post-judgment interest, disgorgement, expenses, payment of Plaintiffs' attorney fees, and other legal and equitable relief as may be available to remedy Defendants' unlawful conduct, including but not limited to the removal of all Defendants as fiduciaries of the Plan.

## The Parties

5.     Plaintiff Rusby Adams, Jr., is a participant of the Plan and a resident of New Albany, Ohio.  For more than 27 years – from January 11, 1982 until September 30, 2009 – Adams was a salaried employee of the Controlled Group of ABC companies. Adams was employed by ABC as a salaried employee in its St. Louis, Los Angeles, Ft. Collins, Colorado, and Baldwinsville, New York locations between 1982 and 2005.  In or about April 2005, Adams became a salaried employee of Metal Container Corporation ("MCC") at its Columbus, Ohio plant, and worked for MCC in Columbus

until his involuntary termination from MCC on September 30, 2009.  MCC is one of the "Controlled Group" of ABC companies as defined in the Plan.

6.      Plaintiff Leslie Schell is a participant of the Plan and a resident of Gainesville, Florida.  For more than 28 years – from August 31, 1981 until September 30, 2009 – Schell was a salaried employee of the Controlled Group of ABC companies. Schell was employed as a salaried employee by ABC from her initial hire date until September 1988 in St. Louis, and then worked for MCC in St. Louis between September 1988 and September 1995.  She worked for MCC in Gainesville, Florida from September 1995 until her involuntary termination from MCC on September 30, 2009.

7.      Plaintiff Daniel Stewart is a participant of the Plan and a resident of Gainesville, Florida.  For more than 22 years – from April 1, 1987 until September 30, 2009 – Stewart was a salaried employee of MCC at its Gainesville, Florida plant until his involuntary termination from MCC.

8.      Plaintiff Kevin Jones is a participant of the Plan and a resident of Janesville, Wisconsin.  For more than six years – from September 29, 2003 until September 30, 2009 – Jones was a salaried employee of the Controlled Group of ABC companies.  Between September 29, 2003 and November 15, 2008, Jones was a salaried employee of Anheuser-Busch, Inc. ("ABI"), ABC's brewery division, at the Merrimack, New Hampshire brewery.  ABI is another of the "Controlled Group" of ABC companies as defined in the Plan.  Jones then worked for MCC at its Ft. Atkinson, Wisconsin plant from November 15, 2008 until his involuntary termination from MCC on September 30, 2009.

4

9.      Defendant ABC is a Delaware corporation with its principal place of business in St. Louis, Missouri.  ABC is the plan sponsor, the named administrator, and a fiduciary of the Plan.

10.     Defendant Plan is a defined benefit pension plan sponsored by ABC.

11.     Defendant Anheuser-Busch Companies Pension Plans Appeals Committee (the "Appeals Committee) is the committee responsible for the administration and adjudication of appeals brought by participants of the Plan.  The Chair of the Appeals Committee is Melissa Reuscher, who is also the "Director, Talent Acquisition & Selection Systems" at ABC.  Upon information and belief, each member of the Appeals Committee, like Reuscher, is also an employee of ABC and/or A-B InBev.  The Appeals Committee is an administrator and fiduciary of the Plan.

12.     Defendant Anheuser-Busch InBev, N.V. ("A-B InBev") is a Belgian corporation that acquired ABC in a $52 billion acquisition that closed on November 18, 2008 (the "Acquisition").  A-B InBev is a party-in-interest to and a fiduciary of the Plan.

13.     Defendant Jeff Karrenbrock is the "Vice President, Total Rewards" for ABC.  He is an administrator and fiduciary of the Plan.


## Jurisdiction, Venue and Standing

14.     Count One arises under Title I of ERISA and is brought by Plaintiffs in their individual capacity and on behalf of all others similarly situated to recover, enforce and/or clarify their right to benefits pursuant to Section 502(a)(1)(B) of ERISA (29 U.S.C. §§ 1132(a)(1)(B)).

15.     Count Two arises under Title I of ERISA and is brought by Plaintiffs in their capacity as participants of the Plan to seek relief on behalf of the Plan as a whole pursuant to Section 502(a)(2) of ERISA (29 U.S.C. §§ 1132(a)(2)).

16.     This Court has federal question jurisdiction over each Count of the Complaint pursuant to 28 U.S.C. § 1331 and Section 502(e)(1) of ERISA (29 U.S.C. §§ 1132(e)(1)).

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2) because the Plan is administered, in part, in this Judicial District, Defendants ABC and A-B InBev conduct substantial business in this Judicial District, many Plan participants reside in this Judicial District, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District.

18.     Each Plaintiff is a participant or beneficiary in the Plan and entitled to benefits as a consequence of each Plaintiff's former employment with a company affiliated with ABC and a participating employer in the Plan

19.     Each Plaintiff has standing to maintain this action pursuant to 29 U.S.C. §§ 1132(a)(1) and 1132(a)(2).

## Facts Common to All Claims

20.     At all relevant times, Plaintiffs were employees of ABC or entities owned or controlled by ABC, such as beverage container plants owned by MCC, ABC's breweries owned by ABI, or others.

21.     Plaintiffs are also, as a consequence of their former employment with ABC-related companies, participants in the Plan.

22.     On or about December 31, 1992, certain pension plans for ABC employees, such as the Anheuser-Busch Salaried Employees Pension Plan (the "SEPP"), the St. Louis Cardinals Office Pension Plan, and others, were merged into the Plan.

23.     The Plan document has been amended from time to time. Since at least September 28, 2000, the Plan has provided at Section 19.11 a provision for enhanced benefits to salaried Plan participants upon a "Change in Control."

24.     Section 19.11 has been amended at least once since February 2002. The version in effect prior to November 14, 2008, states as follows:

> 19.11    Change in Control
>
> (a) A Change in Control shall occur on an "Acceleration Date" as defined in the Company's 1998 Incentive Stock Plan, as amended from time to time, or any successor plan thereto.
>
> (b) Except as provided in Section 18, notwithstanding the provisions of Section 10 or any other provision of this Plan, this Plan shall not be terminated during the three (3) years following a Change in Control.
>
> (c) Notwithstanding the provisions of Section 12 or any other provision of this Plan, no merger, consolidation, or transfer of assets or liabilities of the Plan and the Trust Fund shall be effected during the three (3) years following a Change in Control, except that aggregate assets and liabilities not in excess of five percent (5%) of the amount of the Trust Fund as of the date of the Change in Control may be transferred out of the Plan and Trust Fund during such three (3) years.
>
> (d) The Accrued Benefit of each Participant who is actively employed by a Participating Employer as of the date of a Change in Control shall be fully vested.
>
> (e) Notwithstanding anything, during the three (3) years following a Change in Control,
>
> > (i)     the classifications of Eligible Employees shall not be reduced or enlarged,
> >
> > (ii)    the formulas for determining Participants' Normal Retirement Benefits, Late Retirement Benefits and

Termination Benefits and the forms of payment available under the Plan shall not be reduced, and

(iii) no other benefits, rights and features (within the meaning of the regulations under Section 401(a)(4) of the Code) available to Participants shall be eliminated.

(f) The Normal Retirement Benefit, Late Retirement Benefit, Early Retirement Benefit or Termination Benefit of any Participant under the Supplement for the Anheuser-Busch Salaried Employees' Pension Plan or the Supplement for the ManCar Retirement Plan **whose employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control** (other than members of the Office and Professional Employees International Union, Local 6 AFL-CIO) shall be determined by taking into account an additional five (5) years of Credited Service and, for purposes of Section 4.3 only, an additional five (5) years of age, and shall in any event be at least fifteen percent (15%) larger than the Participant's Normal Retirement Benefit, Late Retirement Benefit, Early Retirement Benefit or Accrued Benefit, as calculated without regard to this Section 19.11(f) **as of the date the Participant's employment with the Controlled Group ends**; provided that nothing in this Section 19.11(f) shall cause acceleration of a Participant's Payment Date under the Plan.

(g) The Board many amend or revoke all or any part of this Section 19.11 at any time before the occurrence of a Change in Control.

(emphasis added).

25.     On or about November 14, 2008, Section 19.11(f) of the Plan was amended to delete the reference to the AFL-CIO so that the provision conformed to the "terms of the applicable collective bargaining agreements" and to make other clarifying revisions.  As amended, Section 19.11(f) provides as follows:

(f) The Normal Retirement Benefit, Late Retirement Benefit, Early Retirement Benefit or Termination Benefit of any Participant under the Supplement for the Anheuser-Busch Salaried Employees' Pension Plan or the Supplement for the ManCar Retirement Plan whose **employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control** shall be determined by taking into account an additional five (5) years

8

of Credited Service and for purposes of Section 4.3 only, an additional five (5) years of age, and shall in any event be at least fifteen percent (15%) larger than the Participant's Normal Retirement Benefit, Late Retirement Benefit, Early Retirement Benefit or Accrued Benefit, as calculated without regard to this Section 19.11(f) **as of the date the Participant's employment with the Controlled Group ends**; provided that nothing in this Section 19.11(f) shall cause acceleration of a Participant's Payment Date under the Plan.

(emphasis added).

26.      At Section 1.1.11 of the Plan, the "Company" is defined as ABC.

27.      As defined in ABC's 1998 Incentive Stock Plan at Section 11(a), the "Acceleration Date" (that constitutes a "Change in Control" in the Plan) occurs when (among other things) "the shareholders of the Company [ABC] approve a definitive agreement of merger or consolidation with any other corporation or business entity," except upon circumstances that do not apply to the Acquisition (such as ABC's acquisition of another company).

28.      At Section 1.1.13 of the Plan, the "Controlled Group" is defined as the "controlled group of corporations, trades and businesses (within the meaning of sections 414(b) and (c) of the [Internal Revenue] Code) of which the Company is a part, as determined from time to time."

29.      The Plan separately provides at Section 2 a list of "participating employers" whose employees are eligible to participate in the Plan.  Numerous ABC-related employers are included, a list that includes but is not limited to ABC, MCC, ABI, Busch Entertainment Corporation ("BEC") (the owner and operator of theme parks such as Busch Gardens, Sea World and others), as well as Sea World, Inc., Sea World of Florida, Inc., and Sea World of Texas, Inc., and others.

30.     The October 1, 2005 Summary Plan Description ("SPD") for the SEPP provides in response to Question No. 5 (pp.4-5) a list of "Participating Employers" whose employees are "Eligible Employees" under the Plan.  Like in the Plan document, ABC, MCC, ABI and BEC are included, and are also included in the list of employers whose employees participate in the "Supplement for the Anheuser-Busch Salaried Employees' Pension Plan," at page 28 of the SPD.  In response to Question No. 6 ("When Am I Eligible to Participate"), the SPD refers to eligibility turning on employment with the "Anheuser-Busch family of organizations."  The SPD is attached hereto as "Exhibit A."

31.     The SPD also states, at page 25, that if a "Participating Employer is sold or spun off, it automatically withdraws from the Plan."

32.     In or about July 2008, ABC and InBev announced the Acquisition.  The Acquisition closed on November 18, 2008.

33.     The Acquisition constituted a "Change in Control" pursuant to Section 19.11(a) of the Plan.

34.     Plaintiffs' accrued Plan benefits fully vested on November 18, 2008 pursuant to Section 19.11(d).

35.     Pursuant to Section 19.11(e)(ii) of the Plan, Plaintiffs' retirement formulas and forms of payment available under the Plan could not be reduced on and after November 18, 2008 for (at a minimum) three years.

36.     Pursuant to Section 19.11(e)(iii) of the Plan, the benefits, rights and features of the Plan available to Plaintiffs on and after November 18, 2008 could not be eliminated for (at a minimum) three years.

10

37.     In or about July 2008, certain Defendants published "Change in Control Talking Points" regarding the SEPP applicable to Plaintiffs.  The Talking Points represented, among other things, that the "pension lump sum distribution" is an "available payment form" under the Plan that "cannot be reduced and no available benefits, rights, or features can be eliminated during the 3-year period following a change in control as this would be considered a material change to the plan."  A copy of the Talking Points are attached hereto as "Exhibit B."

38.     The Talking Points also state that the enhanced benefit provision would apply if a Plan participant was "involuntarily terminated within three years after a change in control."

39.     ABC subsequently issued a July 30, 2008 Memo to "All Salaried Employees" and "All Non-Union Hourly Employees" setting forth answers to various questions arising from the Acquisition.  One of the "topics of interest" included the representation that the pension benefit the salaried employees have accrued to date is "not affected by the change in control."  The memo went on to re-state (like the Talking Points) that the enhanced pension benefit set forth at Section 19.11(f) would apply to any salaried employee who was involuntarily terminated after the change in control:

> In addition, if a participant in the SEPP is involuntarily terminated within three years after a change in control, the participant's benefit will be determined based on five additional years of age and credited service or by increasing the benefit by 15 percent, whichever provides the larger benefit.

The July 30, 2008 Memo is attached hereto as "Exhibit C."

40.     Plaintiffs expected that if they were no longer employed by the "Anheuser-Busch family of organizations" (such that Plaintiffs would no longer receive

11

additional service credit under the Plan) within three years of the Acquisition, Plaintiffs would be deemed "involuntarily terminated."

41.     Plaintiffs' expectation in this regard was consistent with the Plan document at Section 19.11(f), as the Plan provides that it is involuntary termination *from the Controlled Group* that triggers the enhanced benefit. Plaintiffs' expectation is also consistent with the SPD, which provides that when a "Participating Employer is sold or spun off, it automatically withdraws from the Plan." The Plan and SPD are clear and unambiguous, but both the Talking Points and the July 30, 2008 Memo omitted the Plan's reference to the "Controlled Group" from its description of the Change in Control provision.

42.     To pay down the enormous debt undertaken to complete the merger, A-B InBev began planning – *before the merger closed* – to sell non-core assets. A-B InBev needed to realize $7 billion of asset sales to realize its forecasts, a goal that could not be achieved without the sale of assets from the "Controlled Group."

43.     As set forth in an October 7, 2009 article at the *Orlando Sentinel*'s web site describing the subsequent sale of BEC, discussions regarding the sale of BEC began "even before Belgium-based InBev had completed its $52 billion acquisition of St. Louis-based Anheuser-Busch. InBev executives wanted to use the money raised by selling the parks – along with other noncore assets – to help pay down debt stemming from the merger." The article is attached to the Complaint as "Exhibit D."

44.     But the principals of the to-be-combined company realized that the proposed asset sales strategy would be hampered by Section 19.11 of the Plan – every sale from ABC's "Controlled Group" of companies would be accompanied by claims for

enhanced pension benefits pursuant to Section 19.11 and thereby reduce the amount
realized from the sales.

45.     Defendants ABC and A-B InBev therefore implemented a strategy for
selling assets and also denying benefit claims triggered by Section 19.11.  This strategy
included, but is not limited to, the following:

    a.   Misrepresenting to employees who were being involuntarily terminated
from the Controlled Group that the employee/participants were not entitled to
enhanced pension benefits from the Plan upon the sale of assets;

    b.   Conditioning the sale of assets upon the requirement that the acquirer
offer each employee the same position following the sale that the employee held
prior to the sale, so that Defendants could assert that the participant was not
"involuntarily terminated" – notwithstanding the fact that Section 19.11(f) turns
on involuntary termination from the "Controlled Group" rather than involuntary
termination from *all* employment (or some other similar definition);

    c.   A-B InBev's strategy to condition the sale of assets upon the requirement
that the acquirer offer similar jobs to the participants in the Plan was the result of
a legally flawed and suspect September 16, 2008 opinion authored by the Bryan
Cave law firm (the "Legal Opinion") that concluded that because the term
"involuntarily terminated" was not defined in the Plan, it was reasonable for
Defendants to conclude that an employee was not "involuntarily terminated"
when the employee was offered continued employment with the new employer
following the sale.  Defendant Karrenbrock requested the Legal Opinion in
August 2008 in connection with the closing of the Acquisition, an Opinion that

ignored the plain language of the Plan that states that it is a participant's "employment with *the Controlled Group*" that is "involuntarily terminated" for purposes of Section 19.11(f) (emphasis added). The legal analysis also cynically exploits the deferential standard provided to ERISA plan administrators, by concluding that the denial of enhanced pension benefits pursuant to Section 19.11(f) upon the manufactured, pretextual interpretation of "involuntarily terminated" was "reasonable"; and

    d.  Providing "frequently asked questions" memoranda to employees of companies or plants that were being sold that denied that the enhanced pension provision set forth at Section 19.11(f) applied upon the sale of assets.

46.      In or about July 2009, A-B InBev announced that four beverage container plants owned by MCC – plants in Columbus, Ohio, Ft. Atkinson, Wisconsin, Rome, Georgia, and Gainesville, Florida (the "Four Plants") – were being sold to Ball Corporation (the "MCC sale"). The sale of the Four Plants closed on or about October 1, 2009.

47.      At all relevant times prior to October 1, 2009, MCC and the Four Plants were included within the "Controlled Group" as set forth in the Plan.

48.      On and after October 1, 2009, none of the employees at the Four Plants were employed by the "Controlled Group" as that term is defined in the Plan.

49.      A "frequently asked questions" memorandum provided to the employees employed at the Four Plants denied that the employees were entitled to enhanced Plan benefits, contrary to the plain language of the Plan:

**Am I eligible for the +5/+5 enhancement applicable to involuntary termination of employment within 3 years of the InBev change in control?**

If you are offered a position with Ball, you will not be eligible for the +5/+5 enhancement upon the date of your separation from employment with MCC or at the time of your termination of employment with Ball.

50.     In or about September 2009, Plaintiffs made claims for pension benefits pursuant to Section 19.11 of the Plan.

51.     In or about October 2009, A-B InBev announced that BEC was being sold to The Blackstone Group, a private equity fund (the "BEC sale").  The BEC sale closed on December 1, 2009.

52.     At all relevant times prior to December 1, 2009, BEC was included with the "Controlled Group" as set forth in the Plan.

53.     On and after December 1, 2009, none of the employees of BEC were employed by the "Controlled Group" as that term is defined in the Plan.

54.     A "frequently asked questions" memorandum provided to the salaried employees of BEC denied that they were entitled to enhanced Plan benefits, contrary to the plain language of the Plan:

**Am I eligible for the +5/+5 enhancement applicable to involuntary terminations of employment within 3 years of the InBev change in control?**

You will not be eligible for the +5/+5 enhancement upon the date of your separation from active participation in the Anheuser-Busch Employees' Pension Plan or at the time of your termination of employment with BEC after the sale is finalized.

55.     On or about December 23, 2009, Plaintiffs' benefit claims were denied by Defendant Karrenbrock – the same Defendant Karrenbrock who requested the flawed

Legal Opinion in August 2008.  Despite acknowledging that Plaintiffs were not employed by MCC after September 30, 2009, Plaintiffs' claims were denied because Plaintiffs "accepted employment with Ball Corporation, with compensation and benefits substantially equivalent in the aggregate to the compensation and benefits to which" Plaintiffs were entitled to receive while employed at MCC.

56.     The statement that the former MCC employees at the Four Plants receive at Ball "compensation and benefits substantially equivalent in the aggregate to the compensation and benefits" to which they received at MCC is untrue.  Certain base salaries may be comparable, but other items such as bonus compensation, benefits, and other items are not substantially equivalent.

57.     Even more problematic is that the very purpose of a defined benefit pension plan is to encourage employee longevity by utilizing a participant's age and years of service to calculate the expected benefit.  After being involuntarily terminated from MCC upon the sale of the Four Plants, Plaintiffs cannot accumulate additional years of service in the Plan unless they change jobs to take a different position with an ABC-related company.  Without the enhanced benefit, certain Plaintiffs are unable to qualify for full retirement under the Plan at age 58, and must now wait until age 65.  When certain participants now opt for early retirement benefit at age 55, the discount rate applied to their benefit is doubled – 6% per year, rather than 3% per year – among other detrimental effects.  Mitigating against these detrimental effects after a merger or acquisition such as the ABC-InBev Acquisition is therefore one of the very purposes of Section 19.11 of the Plan.  That purpose has been eviscerated by Defendants' erroneous interpretation.

58.     The plain language of the Plan is also clear and unambiguous – so long as a participant's "employment with the Controlled Group is involuntarily terminated" as set forth at Section 19.11(f), the enhanced benefit applies.  That enhanced benefit is calculated "as of the date the Participant's employment *with the Controlled Group* ends" (emphasis added).  As set forth in the SPD, when the "Participating Employer is sold or spun off, it automatically withdraws from the Plan."  The December 23, 2009 denial letter's other basis for denying Plaintiffs' claims – that the intent of the provision was that the provision would not allegedly apply unless there was an "actual break in an individual's employment" – is therefore irrelevant, and also mis-states the actual intent of the provision.

59.     On or about February 18, 2010, Plaintiffs timely appealed their benefit denials to Defendant Appeals Committee.  Plaintiffs also requested all of the documents that constitute the administrative record for their claim, and sought inclusion in the administrative record of additional documents.

60.     On or about April 16, 2010, Defendant Appeals Committee responded to Plaintiffs' appeal by providing the documents that purported to constitute the administrative record, and denying Plaintiffs' additional requests upon the assertion that the additional items were either "confidential" or "irrelevant" to the claim.

61.     Included within Defendant Appeals Committee's record, however, was the Legal Opinion, dated September 16, 2008 (approximately two months *before* the Acquisition closed).  Entire portions and pages of the opinion were redacted, however, rendering the analysis not only erroneous but also incomplete and unreliable.

62.    Plaintiffs were afforded additional time to supplement their appeal upon their receipt of the Appeals Committee's April 16, 2010 letter.  On or about May 27, 2010, Plaintiffs did so, and objected to both the inclusion of the September 16, 2008 Legal Opinion and the exclusion of the documents that should have also been included in the Administrative Record.

63.    On or about June 17, 2010, Plaintiffs' benefit appeals were denied by Defendant Appeals Committee.

64.    The Appeals Committee's denied Plaintiffs' appeal because, "reading the Plan as a whole, the enhanced benefit provided in the Change in Control provisions does not apply to" Plaintiffs' situation.  The denial also cited, among other things, the following:

a.    The alleged intent of the ABC Board when Section 19.11 was adopted in September 2000, without providing the Board minutes upon which the Appeals Committee allegedly relied;

b.    The Plan at Section 3.1(a), which provides that the date an employee has a "Severance from Service" under the Plan is the date that the employee is no longer employed by a company within the Controlled Group, as follows:

> the date on which the Employee resigns, retires, dies or is discharged from employment with all members of the Controlled Group, **including for this purpose a termination of employment in connection with sale of part or all of its interest in an incorporated or unincorporated business or assets by a member of the Controlled Group**.

(emphasis added).

This provision *supports* Plaintiffs' interpretation of Section 19.11(f), because a termination of employment in connection with the sale of a business and assets by a member of the Controlled Group is *exactly* what happened to Plaintiffs. Incredibly – but consistent with Defendants' strategy for denying claims in violation of their fiduciary duties to Plan participants – Defendant Appeals Committee relied on Section 3.1(a) because the Plan did not redundantly repeat Section 3.1(a)'s definition again at Section 19.11; and

    c.   The Legal Opinion, because it concluded that "there was a reasonable basis" for Defendants' self-serving and erroneous interpretation of the Plan.

65.    Defendants deny that the participants in the Plan who were employees of the Four Plants, BEC, or any other company or asset within the Controlled Group that has been or may be sold between November 18, 2008 and November 17, 2011 are entitled to enhanced pension benefits pursuant to Section 19.11 of the Plan.

66.    The denial of Plaintiffs' appeals exhausted the administrative remedies available to Plaintiffs under the Plan.

67.    Plaintiffs have suffered significant harm by Defendants' actions. Rather than working at a "Controlled Group" company until retirement – a negative consequence of the Acquisition to which Section 19.11 offsets – the denial of the Section 19.11(f) pension enhancement, for participants with long years of service at ABC companies and close to retirement age in the Plan, accounts for a substantial decrease. Some participants would see their expected benefit *cut in half* by Defendants' denial. Other participants suffer a more modest reduction. But in any event, the application of Section 19.11(f) should add at least 15% to the benefit to which the

participant would have otherwise been entitled, and provide the retirement benefits to which Plaintiffs expected.

68.     Upon information and belief, Plaintiff Adams' Plan benefit is cut in half by Defendants' denial that Section 19.11(f) applies – decreasing the lump sum value of his Plan benefit by more than approximately $300,000.

69.     Upon information and belief, Plaintiff Schell's Plan benefit is cut in half by Defendants' denial that Section 19.11(f) applies – decreasing the lump sum value of her Plan benefit by more than approximately $350,000.

70.     Upon information and belief, Plaintiff Stewart's Plan benefit is significantly decreased by Defendants' denial that Section 19.11(f) applies, decreasing the lump sum value of his Plan benefit by more than approximately $200,000.

71.     Upon information and belief, Plaintiff Jones' Plan benefit is decreased by Defendants' denial that Section 19.11(f) applies, decreasing the lump sum value of his Plan benefit by more than approximately $35,000.

72.     On or about October 9, 2009, participants in the Plan were informed that the Plan was below 80% funded as of January 1, 2009.  The Plan therefore may require additional funding by ABC and/or A-B InBev to fund the pension payments owed to Plan participants.  Approving Plaintiffs' claims would therefore increase the shortfall in the Plan and require additional funding of the Plan by Defendants. A copy of the October 9, 2009 notice is attached hereto as "Exhibit E."

73.     As a result of the Plan's funding shortfall as set forth at Exhibit E, the forms of payment available to Plan participants have been reduced within three years of the Change in Control, contrary to Section 19.11(e)(ii) of the Plan.  Defendants are

therefore required to fund the Plan to permit the forms of payment available to Plaintiffs as of the date of the Change in Control.

74.     Defendants' actions fail to satisfy the fiduciary duties to which Plaintiffs are entitled.  Rather than acting prudently and for the exclusive purpose of providing benefits to participants and their beneficiaries in a manner consistent with the documents governing the Plan, Defendants have acted for their own benefit – the financial interest of A-B InBev and ABC.

75.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure Rule 23(a) and (b), individually, and on behalf of a class consisting of all participants in the Plan who are employed by any of the "Controlled Group" of ABC-related companies that are sold (in whole or in part) to a buyer outside of the Controlled Group during the period November 18, 2008 through November 17, 2011, and were damaged thereby (the "Class").

76.     This action is properly maintainable as a class action for the following reasons:

> a.   The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through discovery, Plaintiffs believe that there are approximately 850 members of the proposed Class, including but not limited to the salaried employees at the Four Plants on September 30, 2009, and the salaried employees of BEC on November 30, 2009.  It would be inefficient and a great waste of judicial resources to require each member of the proposed class to bring a separate action.  The Class may be identified from records maintained by

Defendants and/or may be notified of this action using the form of notice customarily used in class actions;

    b.   Plaintiffs' claims are typical of the claims of the members of the Class;

    c.   Plaintiffs' claims are not subject to any defense not generally applicable to the members of the proposed class;

    d.   Plaintiffs are committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature;

    e.   Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class;

    f.   There are questions of law and fact common to all of the members of the proposed class, questions that include but are not limited to the following:

        1.     Whether each class member's employment with the Controlled Group was involuntarily terminated within the meaning of Section 19.11(f) of the Plan when the business or plant for which he or she worked was sold to a buyer outside the Controlled Group, even if he or she thereupon became employed by the new owner of the business or plant;

        2.     Whether each Class member is entitled to have their accrued retirement benefits increased pursuant to Section 19.11(f) and vested at that higher amount as of the date of business for which they worked was or is sold to a buyer outside of the Controlled Group;

        3.     Whether the formula for determining each Class member's retirement benefit, the forms of payment of that benefit, and the benefits,

rights and features to which each Class member is entitled cannot be reduced or otherwise modified after November 18, 2008;

4. Whether Defendants have misrepresented the benefits available upon a Change in Control;

5. Whether Defendants, jointly and severally, must provide to the Plan an amount sufficient to permit the Plan to provide the forms of payment of the Plan's benefit that were available on November 18, 2008;

6. Whether Defendants, jointly and severally, must provide to the Plan an amount sufficient to compensate the Class members for the increased Plan benefits to which they are entitled, plus disgorgement of profits, pre- and post-judgment interest, and other amounts;

7. Whether all Defendants shall be removed as administrators and/or fiduciaries of the Plan pursuant to Section 502(a)(2) of ERISA (29 U.S.C. §§ 1132(a)(2)); and

8. Whether Plaintiffs are entitled to recover attorneys' fees from one or more Defendants pursuant to 29 U.S.C § 1132(g)(1).

g. This case is properly certifiable as a class action under all three branches of Rule 23(b) because, among other things:

1. Inconsistent or varying adjudications with respect to individual class members would establish incompatible standards of conduct for the Defendants;

2. Defendants have acted and refused to act on grounds that apply generally to the class; and

23

3.      Questions of law and fact common to the class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy; and

h.  The expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.

77.      Plaintiffs are therefore entitled to what the Plan plainly says – that their rights and benefits in the Plans were vested on and after November 18, 2008, and that once their employment was involuntarily terminated from ABC's "Controlled Group" of companies, their Plan benefit is enhanced pursuant to Section 19.11.  Plaintiffs are also entitled to payment of that benefit in the same manner to which they were entitled prior to their involuntary termination from the Controlled Group, plus pre- and post-judgment interest, disgorgement, expenses, payment of Plaintiffs' attorney fees, and other legal and equitable relief as may be available to remedy Defendants' unlawful conduct, including but not limited to removal of all Defendants as fiduciaries of the Plan.

### Count One – Claim for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

78.      Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully rewritten herein.

79.      Defendants are fiduciaries of the Plan who denied Plaintiffs' claims for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).

80.      Defendants' denials of Plaintiffs' claims for enhanced benefits were arbitrary and capricious for, among other reasons, the following:

    a.   Defendants' interpretation of Section 19.11 of the Plan was contrary to law;

    b.   The intent of the provision, as expressed in the text of Section 19.11 and otherwise, provides for the application of Section 19.11 to Plaintiffs;

    c.   Defendants withheld relevant evidence from Plaintiffs' benefit claim appeal and failed and refused to provide Plaintiff with such evidence;

    d.   Defendants ignored relevant evidence relevant to Plaintiffs' appeal; and

    e.   Defendants were motivated by a self-interested conflict recognized by the U.S. Supreme Court in *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105 (2008) and its progeny.

81.     Plaintiffs have exhausted their administrative remedies, or the exhaustion of remedies is excused by Defendants' conduct.

82.     As a direct and proximate result of the foregoing, Plaintiffs have been damaged.


**Count Two – Breach of Fiduciary Duty Pursuant to 29 U.S.C. § 1132(a)(2)**

83.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully rewritten herein.

84.     Defendants are fiduciaries with respect to the Plan and the claims at issue.

85.     All Defendants have failed to satisfy their fiduciary duties to the Plan's participants and beneficiaries as required by ERISA by, among other things, the following:

a.  Failing to act for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan, and instead acting in ABC's and A-B InBev's financial interests by denying Plaintiffs' claims, misrepresenting the benefits available to Plaintiffs, failing to fully fund the Plan to permit the same forms of payment available to Plan participants as required by Section 19.11(e), and others;

b.  Failing to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims by failing to properly review and administer Plaintiffs' claims, by making misrepresentations to Plan participants, by failing to ensure that the forms of payment and the benefits, rights and other features available to Plan participants on November 18, 2008 were not reduced or eliminated, among other things; and

c.  Failing to act in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA by ignoring and intentionally mis-applying Section 19.11 to deny Plaintiffs the benefits to which they are entitled, by misrepresenting the terms of the Plan, and by failing to ensure that the forms of payment and the benefits, rights and other features available to Plan participants on November 18, 2008 were not reduced or eliminated, among other things.

86.     As a direct and proximate result of the foregoing, Plaintiffs have been damaged by Defendants in an amount to be determined at or before trial, plus pre- and

post-judgment interest, disgorgement, attorney fees, and other monetary and equitable relief as may be appropriate.

87.     As a direct and proximate result of the foregoing, all Defendants shall be removed as fiduciaries pursuant to 29 U.S.C. § 1109(a).

WHEREFORE, Plaintiffs Rusby Adams, Jr., Leslie Schell, Daniel Stewart, and Kevin Jones, individually and on behalf of all others similarly situated, and/or on behalf of the Plan as a whole, pray for the following Order:

a.  Declaring that this action is properly maintainable as a class action, and certifying Plaintiffs as class representatives and Plaintiffs' counsel as lead counsel;

b.  Awarding Plaintiffs enhanced pension benefits consistent with Section 19.11(f) of the Plan;

c.  Ordering that the formula for determining each Class member's retirement benefit, the forms of payment of that benefit, and the benefits, rights and features to which each Plaintiff is entitled shall be vested and unchanged as was available to Plaintiffs on November 18, 2008;

d.  Ordering Defendants, jointly and severally, to pay to the Plan an amount sufficient to provide Plaintiffs with the increased Plan benefits to which they are entitled, and to permit the Plan to provide to Plaintiffs the forms of payment and the benefits, rights and other features available to Plan participants on November 18, 2008;

27

e. Awarding Plaintiffs disgorgement of the profits Defendants have earned through use of the amounts that should have been paid to the Plan to provide Plaintiffs with the increased Plan benefits to which they are entitled;

f. Removing each Defendant as an administrator and/or fiduciary of the Plan;

g. Awarding pre- and post-judgment interest at a rate of interest determined to be just and equitable;

h. Awarding Plaintiffs their costs and expenses of suit;

i. Awarding Plaintiffs their attorney fees; and

j. Awarding any and all other relief, whether legal or equitable, which this Court deems just and proper.


Respectfully Submitted,


Scott J. Stitt, Esq.                    (0073943)

JAMES E. ARNOLD & ASSOCIATES, LPA
115 W. Main Street, 4th Floor
Columbus, Ohio 43215
Telephone      (614) 460-1600
Facsimile      (614) 469-1066
Email          sstitt@arnlaw.com

*Trial Counsel for Plaintiffs*

Of Counsel:

James E. Arnold, Esq.  (0037712)
Damion M. Clifford, Esq.  (0077777)

JAMES E. ARNOLD & ASSOCIATES, LPA
115 W. Main Street, 4th Floor
Columbus, Ohio 43215
Telephone  (614) 460-1600
Facsimile  (614) 469-1066
Email   jarnold@arnlaw.com
     dclifford@arnlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATION

Pursuant to 29 U.S.C. § 1132(h), I hereby certify that this Complaint, brought by Plaintiffs in their capacity as participants of the Anheuser-Busch Companies Pension Plan pursuant to (among other things) 29 U.S.C. § 1132(a)(2) has been served upon the following via certified mail this 15th day of September 2010:

Hilda L. Solis
Secretary of Labor
U.S. Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C. 20210

Timothy F. Geithner
Secretary of the Treasury
Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220

Scott J. Stitt, Esq.   (0073943)