IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Rusby Adams, Jr., et al.,

      Plaintiffs,

      v.                         Case No. 2:10-cv-826

Anheuser-Busch Companies,
Inc., et al.,

      Defendants.


OPINION AND ORDER

This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. Plaintiffs Rusby Adams, Jr., Leslie Schell, Daniel Stewart and Kevin Jones are former employees of the Metal Container Corporation ("MMC"), a subsidiary of defendant Anheuser-Busch Companies, Inc. ("ABC"). As employees of MCC, plaintiffs were participants in the Anheuser-Busch Companies Pension Plan ("the Plan"). According to the complaint in this case (Doc. No. 2) filed on September 15, 2010, ABC was acquired by InBev, N.V., a Belgian beverage company, in 2008. Complaint, ¶1. MCC was later sold to Ball Corporation on or about October 1, 2009, and plaintiffs were then employed by Ball. See Complaint, ¶¶46-48, 55.

At or around the time of the sale of MMC, plaintiffs made claims for benefits under §19.11 of the Plan, entitled "Change in Control." Under §19.11(d) of the Plan, the "Accrued Benefit of each Participant who is actively employed by a Participating Employer as of the date of a Change in Control shall be fully vested." Complaint, ¶24, Plan, §19.11(d); see also Angevine v. Anheuser-Busch Companies Pension Plan, No. 4:09-CV-1959(CEJ), 2010

WL 2835722 at *2 (E.D.Mo. July 16, 2010)(quoting the Plan).  The
Plan further provided that during the three years following a
change in control, the formulas for determining benefits and "the
forms of payment available under the Plan shall not be reduced ...
and no other benefits, rights and features ... available to
Participants shall be eliminated." Plan, §19.11(e)(ii) and (iii).
The Plan also states that the retirement benefit of any participant

> whose employment with the Controlled Group is
> involuntarily terminated within three (3) years after the
> Change in Control shall be determined by taking into
> account an additional five (5) years of Credited Service
> and [for purposes of early retirement] an additional five
> (5) years of age, and shall in any event be at least
> fifteen percent (15%) larger than the Participant's
> Normal Retirement Benefit, Late Retirement Benefit, Early
> Retirement Benefit, as calculated without regard to this
> Section 19.11(f) as of the date of the Participant's
> employment with the Controlled Group ends' provided that
> nothing in this Section 19.11(f) shall cause acceleration
> of a Participant's Payment Date under the Plan.

Complaint, ¶25, Plan, §19.11(f).  Plaintiffs' position was that
because they were no longer employed by an ABC affiliated company
within three years of the acquisition of ABC, they had been
"involuntarily terminated" within the meaning of §19.11(f).
Complaint, ¶40.

Plaintiffs were notified on December 23, 2009, that their
claims for benefits under this section were being denied because
they had accepted employment with Ball Corporation.  Complaint,
¶55.  Plaintiffs appealed the denial of their benefits to the Plan
Appeals Committee.  Complaint, ¶59.  On June 17, 2010, the appeal
was denied by the Appeals Committee.  Complaint, ¶63.

Plaintiffs then filed the instant action, which they seek to
pursue as individuals and as representatives of a class of
similarly situated former employees of ABC.  The named defendants

2

are ABC, the Plan, the Anheuser-Busch Companies Pension Plans Appeals Committee, Anheuser-Busch InBev, N.V. ("Anheuser-Busch InBev"), and Jeff Karrenbrock, who holds the title "Vice President, Total Rewards" for ABC.  Count One of the complaint asserts a claim for benefits pursuant to 29 U.S.C. §1132(a)(1)(B).  Count Two is a claim for breach of fiduciary duty under 29 U.S.C. §1132(a)(2).

This matter is before the court on the defendants' partial motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief may be granted.  Defendants Anheuser-Busch InBev and Karrenbrock have moved to dismiss Count One of the complaint as to them.  All defendants have moved to dismiss Count Two of the complaint.

I. Rule 12(b)(6) Standards

In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005).  To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005).  Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.  Id.

While the complaint need not contain detailed factual

3

allegations, the "[f]actual allegations must be enough to raise the claimed right to relief above the speculative level," <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), and must create a reasonable expectation that discovery will reveal evidence to support the claim. <u>Campbell v. PMI Food Equipment Group, Inc.</u>, 509 F.3d 776, 780 (6th Cir. 2007). A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, ____ U.S. ____, 129 S.Ct. 1937, 1949 (2009). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. <u>Id</u>. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id</u>. at 1950. Where the facts pleaded do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as required under Fed.R.Civ.P. 8(a)(2). <u>Ibid</u>.

Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555; <u>see also Ashcroft</u>, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); <u>Association of Cleveland Fire Fighters v. City of Cleveland, Ohio</u>, 502 F.3d 545, 548 (6th Cir. 2007).

In evaluating a motion to dismiss, a court considers the

4

complaint.  <u>Amini v. Oberlin College</u>, 259 F.3d 493, 502 (6th Cir. 2001).  The court may also consider a document or instrument which is attached to the complaint, or which is referred to in the complaint and is central to the plaintiff's claim.  <u>See</u> <u>id.</u>; Fed.R.Civ.P. 10(c)("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); <u>Weiner v. Klais & Co., Inc.</u>, 108 F.3d 86, 89 (6th Cir. 1997).

## II. Count One - Claim for Benefits

Under ERISA, 29 U.S.C. §1132(a)(1)(B), a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. §1132(a)(1)(B).  Defendants Anheuser-Busch InBev and Karrenbrock have moved to dismiss Count One of the complaint as to them because the allegations regarding that count are insufficient to show that they had any involvement in the actual decision to deny benefits to the plaintiffs.

The proper defendant in an ERISA action concerning benefits is the plan administrator.  <u>See</u> <u>Riverview Health Institute LLC v. Medical Mutual of Ohio</u>, 601 F.3d 505, 522 (6th Cir. 2010).  Nominal designation as a plan administrator is not sufficient in this context.  Rather, an entity, such as an employer, is not a proper party defendant in an action concerning benefits unless the employer "'is shown to control administration of the plan.'"  <u>Gore v. El Paso Energy Corp. Long Term Disability Plan</u>, 477 F.3d 833, 842 (6th Cir. 2007)(quoting <u>Daniel v. Eaton Corp.</u>, 839 F.2d 263, 266 (6th Cir. 1988)).  In other words, the defendant in a §1132((a)(1)(B) action must be the party or entity which made the

5

decision to deny benefits. For example, in <u>Gore</u>, the Sixth Circuit held that the employer could not be sued under §1132(a)(1)(B) because a life insurance company, which was required under the terms of the policy through which the plan was funded to manage and adjudicate claims for the employer, was solely responsible for the denial of benefits. <u>Id.</u> at 835, 842. In <u>Moore v. Lafayette Life Insurance Co.</u>, 458 F.3d 416, 438 (6th Cir. 2006), the court upheld the dismissal of a denial of benefits claim against the employer. In that case, although the employer was the designated plan administrator, the employer did not participate in the decision to deny benefits; rather, an insurance company, acting as claims administrator, exercised full authority in adjudicating the claim for benefits and made the decision to deny benefits to the plaintiff.

According to the Summary Plan Description for the Plan ("the Summary"), Ex. A to the complaint, the Plan is administered by ABC through its HR Service Center, Retirement Plans Department and Pension Plan Appeals Committee in St. Louis, Missouri. Ex. A, Q&A 4, p. 4. ABC is identified as the "Plan Administrator" and the "Plan Sponsor." Ex. A., p. 27. The Summary also states that if a claim is denied, the participant will be notified of the reasons for denial by the "Plan Administrator." Ex. A, Q&A 23, p. 21. The Plan also provides for an appeal to the Appeals Committee. Ex. A., Q&A 23, p. 22. The Summary states, "The decision on review will be made independently by individuals other than those who denied our claim or their subordinates." Ex. A., Q&A 23, p. 22. It further states that the "decision on review will be final and non-reviewable, unless a court determines that it is arbitrary and capricious, and will be binding on you and the company." Ex. A,

6

Q&A 23, p. 23.

In regard to Anheuser-Busch InBev, the complaint simply alleges that Anheuser-Busch InBev "is a Belgian corporation that acquired ABC in a $52 billion acquisition that closed on November 18, 2008" and that it is "a party-in-interest to and a fiduciary of the Plan." Complaint, ¶12.  The complaint contains no facts alleging that Anheuser-Busch InBev has any role in the administration of the Plan, or that it has any authority under the Plan to determine eligibility for benefits, or that it had any authority to make the decision to deny benefits to plaintiffs.  The Summary, which, as an exhibit to the complaint, is considered a part of the complaint, makes no reference to Anheuser-Busch InBev. Rather, it identifies ABC as being both plan administrator and the plan claims administrator.  The complaint alleges that plaintiffs' benefit appeals were denied by the Plan Appeals Committee. Complaint, ¶¶63-64.

Although ¶13 of the complaint contains the conclusory allegation that Karrenbrock is "an administrator and fiduciary of the Plan," the Summary makes no reference to defendant Karrenbrock as being a "Plan Administrator."  The complaint does not factually describe how his role as "Vice President, Total Rewards" has anything to do with the administration of the Plan.  See Riverview Health Institute, 601 F.3d at 523 (noting that although insurance company could be a proper party in a benefits action, plaintiffs had failed to sufficiently plead its status as an ERISA fiduciary); D'Amato v. Corporate Consulting, Inc., No. 94-3218, 1995 WL 510041 at *2 (6th Cir. Aug. 28, 1995)("Although the complaint makes a conclusory allegation that [the insurance company] was the administrator of the plan, it does not contain any factual

allegations to support this conclusion[.]"). Even assuming that the complaint is sufficient to allege that Karrenbrock has duties with respect to the Plan, the mere fact that a person holds an office or position within the plan does not make that person a fiduciary. 29 C.F.R. §2509.75-8, Q&A D-3. A holder of an office or position of an employee benefit plan would be a plan fiduciary if that person "has the final authority to authorize or allow benefit payments in cases where a dispute exists as to the interpretation of the plan provisions relating to eligibility for benefits." Id. In ¶55 of the complaint, plaintiffs allege that their benefit claims were denied "by Defendant Karrenbrock[.]" However, the complaint fails to allege factually how Karrenbrock has any discretionary authority to grant or deny benefits. In addition, no facts are alleged to clarify whether defendant Karrenbrock actually made the initial decision to deny benefits or whether he was simply the employee who signed the letter advising plaintiffs of the decision of ABC, designated in the Summary as the "Plan Administrator." A person who performs purely ministerial functions, such as preparation of employee communications material, but who has no discretionary authority or control respecting management of the plan or disposition of the assets of the plan is not a plan fiduciary. See 29 C.F.R. §2509.75-8, Q&A D-2; Briscoe v. Fine, 444 F.3d 478, 494 (6th Cir. 2006)(an administrator "'without the power to make plan policies or interpretations but who performs purely ministerial functions such as processing claims, applying plan eligibility rules, communicating with employees, and calculating benefits, is not a fiduciary under ERISA.'")(quoting Baxter v. C.A. Muer Corp., 941 F.2d 451, 455 (6th Cir. 1991)). The complaint fails to allege specific facts showing

that Karrenbrock had any discretionary authority or control over the management of the plan or disposition of the assets of the plan.  However, even assuming that Karrenbrock had the authority to make the initial decision to deny benefits, other allegations in the complaint reveal that Karrenbrock did not have "the final authority to authorize or allow benefit payments in cases where a dispute exists as to the interpretation of the plan provisions relating to eligibility for benefits[,]" and therefore he does not qualify as a fiduciary.  See 29 C.F.R. §2509.75-8, Q&A D-3.  The Summary indicates that the Appeals Committee is responsible for making the final decision regarding eligibility for Plan benefits. Similarly, the complaint alleges that plaintiffs' benefit appeals were denied by the Appeals Committee.  Complaint, ¶¶63-64.

The court finds that the complaint fails to allege sufficient facts to support a claim for denial of benefits against defendants Anheuser-Busch InBev and Karrenbrock, and the motion to dismiss Count One insofar as it pertains to these defendants is granted.


III. Count Two - Breach of Fiduciary Duty

A. Nature of Claim

Count Two is a claim for breach of fiduciary duty brought pursuant to 29 U.S.C. §1132(a)(2).  Under that section, a civil action may be brought by a participant of a plan "for appropriate relief under section 1109 of this title[.]"  §1132(a).  Title 29, Section 1109, provides in part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which

have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. §1109.

Under ERISA,

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. §1002(21)(A).

Thus, a fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a plan. Pegram v. Herdrich, 530 U.S. 211, 222 (2000). Under the statute, an administrator or manager of the plan is a fiduciary only "to the extent" that he exercises discretionary authority, control, or responsibility respecting the management of the plan, the disposition of its assets, or the administration of the plan. Id. at 225-226; §1002(21)(A). "The term 'fiduciary' not only includes persons specifically named as fiduciaries by a benefit plan, 'but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets.'" Michigan Affiliated Healthcare System, Inc. v. CC Systems Corp. of Michigan, 139 F.3d 546, 549 (6th Cir. 1998)(quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (1993)).

ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants

and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan[.]" 29 U.S.C. §1104(a)(1) and (a)(1)(A)(i) and (ii). A fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]" 29 U.S.C. §1104(a)(1)(B). A fiduciary must also act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter[.]" 29 U.S.C. §1104(a)(1)(D).

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that: (1) the defendant was a fiduciary of an ERISA plan who, (2) acting within his capacity as a fiduciary, (3) engaged in conduct constituting a breach of his fiduciary duty. In re Cardinal Health, Inc. ERISA Litigation, 424 F.Supp.2d 1002, 1016 (S.D.Ohio 2006).

B. Failure to Pay Benefits

Plaintiffs allege that defendants breached their fiduciary duties by "intentionally mis-applying Section 19.11 to deny Plaintiffs the benefits to which they were entitled[.]" Complaint, ¶85(c). Plaintiffs allege that Anheuser-Busch InBev decided to sell subsidiaries of ABC to cover the cost of the acquisition of ABC. Complaint, ¶43. Plaintiffs further allege that the defendants adopted an erroneous (according to plaintiffs) interpretation of §19.11 of the Plan which would permit them to deny benefits where employees were offered the same position they

11

had occupied with an ABC subsidiary following the sale of the subsidiary, thereby maximizing the profits from the sale of these subsidiaries. Complaint, ¶45.[1] These allegations amount, in essence, to a mirror image of the claim for the payment of benefits to the plaintiffs asserted in Count One of the complaint.

Since plaintiffs have alleged here that defendants' fiduciary duties under §1109(a) run to them as individuals rather than to the Plan as a whole, plaintiffs cannot recover under §1132(a)(2) for their losses due to an alleged breach of fiduciary duty in the form of a refusal to pay benefits. Tregoning v. American Community Mutual Ins. Co., 12 F.3d 79, 83 (6th Cir. 1993). Plaintiffs cannot bring suit under §1132(a)(2) to recover personal damages for misconduct, but rather must seek recovery on behalf of the Plan, as all relief must go to the benefit of the ERISA plan itself. See Loren v. Blue Cross & Blue Shield of Michigan, 505 F.3d 598, 608 (6th Cir. 2007); see also Bauer v. RBX Industries, Inc., 368 F.3d 569, 582 (6th Cir. 2004)(where main relief sought by plaintiffs for breach of fiduciary duties was a monetary settlement that inured to them, plaintiffs could not pursue a claim under §1132(a)(2))(overruled on other grounds, Winnett v. Caterpillar, Inc., 553 F.3d 1000 (6th Cir. 2009)).

In Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 140-143 (1985), the Supreme Court construed §1132(a)(2) as

---

[1]To the extent that the complaint may be read as alleging that ABC participated in the decision to sell holdings of ABC to cover the acquisition costs, any such decision was made by ABC as an employer, not as a fiduciary of the Plan. Employers "who are also plan sponsors wear two hats: one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer" and the "fiduciary obligations imposed by ERISA are implicated only where an employer acts in its fiduciary capacity." Hunter v. Caliber System, Inc., 220 F.3d 702, 718 (6th Cir. 2000). Employers can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers. Pegram, 530 U.S. at 225.

allowing a cause of action to recover only relief for the entire plan, not a monetary reward for individual beneficiaries. Similarly, the phrase "other equitable or remedial relief" does not "authorize any relief except for the plan itself." Id. at 144; see also Varity Corp. v. Howe, 516 U.S. 489, 515 (1996). Although an individual may bring a claim under §1132(a)(2), that section does not permit plaintiffs to recover monetary damages or to secure equitable relief in their individual capacities. Weiner, 108 F.3d at 91-92.

The alleged breaches of fiduciary duty here may be relevant to plaintiffs' claim in Count One to recover individual benefits under §1132(a)(1)(B), although only insofar as they bear upon whether the plan administrators acted arbitrarily and capriciously in denying benefits to plaintiffs. Bagsby v. Central States, Southeast & Southwest Areas Pension Fund, 162 F.3d 424, 430 (6th Cir. 1998). However, the allegations that defendants breached a fiduciary duty to plaintiffs by denying them benefits is not sufficient to state a claim under §1132(a)(2) because the allegations in the complaint fail to show how, in denying benefits to the plaintiffs, the Plan suffered a loss. "A plan that offers fewer benefits to its participants has not 'lost anything, and in fact may have its assets increase as a result of smaller payout amounts. The proper remedy for breaches of fiduciary duty that take the form of denials of plan benefits is therefore a suit under §1132(a)(1)(B)." Johns v. Blue Cross Blue Shield of Michigan, No. 2:08-cv-12272, 2009 WL 646636 at *7 (E.D.Mich. Mar. 10, 2009).

Plaintiffs cite Fallick v. Nationwide Mutual Ins. Co., 162 F.3d 410 (6th Cir. 1998), claiming that the Sixth Circuit permitted the plaintiff to pursue a breach of fiduciary duty claim under

§1132(a)(2) which asserted that the plan in that case was operated in a manner inconsistent with plan documents.   However, an examination of that decision reveals that the court actually addressed only two issues: whether the case was properly dismissed for failure to exhaust administrative remedies, and whether a potential class member has standing to represent members of a putative class against numerous ERISA benefit plans even if he was only a member of one of those plans.   Id. at 412-413.   This case does not support plaintiffs' position.

The case of Canada v. American Airlines, Inc. Pilot Retirement Benefit Program, No. 3:09-0127, 2009 WL 2176983 (M.D.Tenn. July 21, 2009), cited by plaintiffs, is also inapposite.   In that case, the court permitted the plaintiff to pursue a §1132(a)(2) claim alleging that the employer had erroneously interpreted the plan in a manner that lowered the amount of the employer's contributions to the plan.   The court noted that the plaintiff in that case was seeking declaratory and injunctive relief for which the plan would be the direct beneficiary.   Id. at *7.   The reduced amount of the employer's contribution to the plan would obviously have an impact on the plan's funding and the sufficiency of its assets to pay benefits.   If the court agreed with plaintiff by concluding that the employer's interpretation of the plan was flawed and awarded declaratory and injunctive relief requiring a larger contribution, the plan would be the beneficiary of such relief.   That case does not support plaintiffs' argument that they should be permitted to pursue a claim under §1132(a)(2) to challenge ABC's interpretation and application of §19.11 which resulted in the denial of benefits to them, where plaintiffs do not allege that this decision also had the effect of reducing the assets of the Plan.

14

Plaintiffs also rely on LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248 (2008).  In LaRue, the Supreme Court held that participants in a "defined contribution plan" or "individual account plan"[2] could proceed under §1132(a)(2) to sue a fiduciary whose alleged misconduct impaired the value of plan assets in the participant's individual account.  Id. at 256.  The Court distinguished the individual account plan at issue in that case with the defined benefit plan[3] at issue in Russell.  The Court noted that the "principal statutory duties imposed on fiduciaries by [§1132(a)(2)] 'relate to the proper management, administration, and investment of fund assets,' with an eye toward ensuring that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries."  Id. at 253 (quoting Russell, 473 U.S. at 142).  The Court further observed that the "entire plan" language in Russell spoke to the impact of ERISA's fiduciary obligations on plans that pay defined benefits, whereas, in the case of defined contribution plans, fiduciary misconduct "need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive."  Id. at 255-56.

The Summary of the Plan in the instant case reveals that the Plan is a defined benefit plan like the plan in Russell, not an

---

[2]The term "individual account plan" or "defined contribution plan" means "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account."  29 U.S.C. §1002(34).

[3]The term "defined benefit plan" means a pension plan other than an individual account plan.  29 U.S.C. §1002(35).  Such a plan "generally promises the participant a fixed level of retirement income, which is typically based on the employee's years of service and compensation."  LaRue, 552 U.S. at 250 n. 1.

individual account plan.  The Plan provides a retirement benefit based upon salary and credited service at retirement.  The Plan is funded entirely by the employers, and no participant contributions are required or permitted.  Ex. A,  p. 3.  Therefore, Russell controls, and plaintiffs' claims for breach of fiduciary duties through the failure to award them benefits cannot be construed as benefitting the Plan.  See Fisher v. Penn Traffic Co., 319 Fed.Appx. 34, 35 (2d Cir. April 2, 2009)(distinguishing LaRue in the case of a cash balance plan which did not involve individual accounts).

Plaintiffs also rely on Tullis v. UMB Bank, N.A., 515 F.3d 673 (6th Cir. 2008).  In Tullis, the court held that the plaintiffs could pursue a claim under §1132(a)(2) even though they did not specifically allege damages to their plans, but instead alleged that they suffered damages as individuals due to defendant's failure to advise them that their investment advisor was under investigation for fraudulent activity.  The court concluded that the complaint was sufficient to put the defendant on notice that plaintiffs were seeking recovery for losses that occurred to their plans.  Id. at 680-81.  Tullis is also distinguishable because it involved a defined benefit plan which featured individual accounts maintained for the plaintiffs, as discussed in LaRue, not a Russell defined contribution plan such as the Plan in this case.

Plaintiffs have alleged that the Plan's interpretation of §19.11 was erroneous and that this interpretation constituted a breach of fiduciary duty which deprived them of benefits under the Plan, but have failed to allege facts showing that this interpretation resulted in losses to the Plan itself.  Under Russell, plaintiffs may not pursue a claim for breach of fiduciary

16

duty under §1132(a)(2) based on the Plan's interpretation of Plan language which resulted in the refusal to award them enhanced retirement benefits under §19.11.

## C. Inadequate Funding of the Plan

The Summary attached to the complaint indicates that Plan participants have the option of receiving the actuarial equivalent value of their retirement benefit in a single lump-sum payment. Ex. A., p. 20.  Attached to the complaint is a memorandum to Plan participants dated October 8, 2009, which notified participants that since the Plan's funded status was below eighty percent, the lump sum form of payment was being restricted.  Complaint, Ex. E. Based on this memorandum, plaintiffs allege that the defendants breached a fiduciary duty to Plan participants by failing to fund the Plan, thereby depriving them of the lump sum option.

The memorandum states that the Plan was between eighty and sixty percent funded as of September 30, 2009, "[d]ue largely to market declines during 2008" and "a large number of lump sum payouts under the 2008 Enhanced Retirement Program and benefit accruals resulting from the restructuring." Ex. E, p. 1.  The memorandum explains that lump sum payments would be limited to fifty percent of the amount that could be payable without the restriction.  Ex. E, p. 2.  It also states that the "funding level of the Plan depends, in large part, on investment returns and the level of interest rates" and that "[d]uring an uncertain economy, it is difficult to make accurate predictions regarding how long the restrictions will be in effect."  Ex. E, p. 3. The memorandum further notes that "the rules established by the federal government take precedence over certain payment options provided under the

17

Plan" and that the "restrictions apply to a specific form of payment only; the accrued benefit you have earned is not affected." Ex. E, p. 1.

The funding of ERISA plans is subject to enhanced controls provided under the Pension Protection Act of 2006. Minimum funding standards are contained in 29 U.S.C. 1083, including the minimum required contribution with respect to any plan year. See 29 U.S.C. §1083(a). Under 29 U.S.C. §1056(g)(3), limitations are imposed on accelerated benefit distributions if the funding of the plan drops below eighty percent. That section provides in relevant part:

> A defined benefit plan which is a single-employer plan shall provide that, in any case in which the plan's adjusted funding target attainment percentage for a plan year is 60 percent or greater but less than 80 percent, the plan may not pay any prohibited payment after the valuation date for the plan year to the extent the amount of the payment exceeds the lesser of—
>
> (I) 50 percent of the amount of the payment which could be made without regard to this subsection, or
>
> (II) the present value (determined under guidance prescribed by the Pension Benefit Guaranty Corporation, using the interest and mortality assumptions under section 1055(g) of this title) of the maximum guarantee with respect to the participant under section 1322 of this title.

29 U.S.C. §1056(g)(3)(C)(i). If a plan becomes underfunded, it is subject to a shortfall amortization charge consisting of installments made over a seven-plan-year period. 29 U.S.C. §1083(c).

Although plaintiffs allege in conclusory fashion that defendants have breached a fiduciary duty to adequately fund the Plan to permit a lump sum benefit, the complaint contains no factual allegations that the defendants failed to make any

18

contributions to the Plan required under either the terms of the Plan or ERISA. They have also failed to allege facts in the complaint which show that any of the named defendants have any obligation to fund the Plan. The Summary states that the "participating employers pay the entire cost of the benefits provided by the Plan" and that the "amounts to be contributed each year are determined by an actuary who estimates how may employees may become eligible for benefits in future years and how much they are expected to receive." Ex. A, Q&A 24, p. 23.

Plaintiffs have failed to allege that the Plan contains any funding requirements which are different from those specified in §1083(c). Rather, the circumstances described in the memorandum, including a slump in the economy and a reduction in the value of Plan investments, were matters beyond defendants' control.[4] ERISA itself provides a statutory remedy for the underfunding in the form of the shortfall amortization charge.

As to the suspension of the lump sum payment option, a fiduciary must act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter[.]" 29 U.S.C. §1104(a)(1)(D); see also Kuper v. Iovenko, 66 F.3d 1447, 1457 (6th Cir. 1995)("ERISA provides that a fiduciary may only follow plan terms to the extent that the terms are consistent with ERISA."). Even though the Plan provides for a lump sum payment, any fiduciary of the Plan would nonetheless be obligated to comply with §1056(g) in the event that the funding

---

[4]Even the Summary notes that "[t]he amount in the Trust Fund at any given time depends upon how much has been contributed, how much has been earned from investments, and how much has been paid out in benefits and for expenses." Ex. A, Q&A 24, p. 23.

level of the Plan dropped below eighty percent.  The Summary states that "[e]xcept as permitted by law, an amendment [of the Plan] may not retroactively decrease any benefits you have already accrued." Ex. A, p. 24.  However, the suspension of a lump sum payment was not only permitted, but required by law, and in any event, it had no effect on the amount of the participants' accrued benefits, but rather only temporarily changed the manner in which participants could receive their benefits.  See Hunt v. Hawthorne Associates, Inc., 119 F.3d 888, 991 n. 62 (11th Cir. 1997)(moratorium on lump sum payments had no effect on plaintiff's actual interest in the plan, but only changed the manner in which benefits could be paid).

In Auwarter v. Donohue Paper Sales Corp. Defined Benefit Pension Plan, 802 F.Supp. 830 (E.D.N.Y. 1992), the court held that the amendment of the plan by the employer to eliminate the lump sum payment option violated 29 U.S.C. §1054(g)(2)(B), which prohibits "eliminating an optional form of benefit," where the employer failed to amend the plan during the transition period provided for in Department of Treasury regulations.  Id. at 837-840.  In the instant case, there are no allegations that defendants amended the Plan to eliminate the lump sum payment option.  Rather, that option was suspended in compliance with §1056(g), enacted after the decision in Auwarter.

Plaintiffs rely on Munsey v. Tactical Armor Products, Inc., No. 3:07-CV-445, 2009 WL 3241721 (E.D.Tenn. Sept. 30, 2009).  In that case, plaintiffs asserted a claim under §1132(a)(2) against their employers who stopped paying health insurance premiums to the insurer who issued the policy which constituted plaintiffs' employee welfare benefit plan, but continued to withhold funds from employee pay checks and commingled those funds with their personal

20

accounts, thereby resulting in the termination of the plan.  The
court noted that appropriate relief was limited to relief that
benefitted the plan directly, and concluded that plaintiffs were
entitled to seek to recover losses in the form of unpaid premium
payments that would have inured to the plan but for the alleged
breach of fiduciary duty of defendants.  Id. at 2009 WL 3241721 *4.
The court further stated that any losses or profits would be
restored to the plan, and any relief to plaintiffs would only be
allocated to plaintiffs for their own benefit if plaintiffs were
entitled to benefits pursuant to the terms of the plan, in other
words, an indirect recovery.  Id.  Although the court noted, citing
Tullis, that it was immaterial that plaintiffs did not specifically
state that they were seeking to recover on behalf of the plan, the
court also read plaintiffs' pleadings as asserting a right to
recovery on behalf of the plan, not as plaintiffs seeking
individual compensation for the alleged breach of fiduciary duty.
Id., 2009 WL 3241721 at *4-5.

Munsey is readily distinguishable.  In that case, the employer
stopped making premium payments to fund the plan, which resulted in
the plan being unfunded, i.e., an injury to the plan for which
plaintiffs sought recovery.  Here, plaintiffs have failed to plead
any facts showing that defendants neglected any duty either under
the terms of the Plan or under ERISA to provide funding to the
Plan.

The complaint fails to state a claim for breach of fiduciary
duty against defendants based on the suspension of the lump sum
payment option.

D. Misrepresentations

21

Plaintiffs also allege that defendants breached their fiduciary duties by making misrepresentations concerning plaintiffs' eligibility for benefits under §19.11 of the Plan. "A fiduciary breaches his duty by providing plan participants with materially misleading information, 'regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.'" Moore, 458 F.3d at 432 (quoting Krohn v. Huron Mem. Hospital, 173 F.3d 542, 547 (6th Cir. 1999)). Misleading communications to plan participants regarding plan administration, such as eligibility under the plan or the extent of benefits under a plan, will support a claim for breach of fiduciary duty. Drennan v. General Motors Corp., 977 F.2d 246, 251 (6th Cir. 1992). To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, a plaintiff must show: (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these representations constituted material misrepresentations; and (3) that the plaintiff reasonably relied on those misrepresentations to his or her detriment. Moore, 458 F.3d at 433.

Attached to the complaint as Exhibit B is a memorandum entitled "CHANGE IN CONTROL TALKING POINTS." This memorandum states:

> Q.   What if I am terminated within three years after a change in control?
> A.   If a participant in the [Plan] is involuntarily terminated within three years after a change in control, the participant's benefit will be determined by taking into account five additional years of age and credited service or by increasing the benefit by 15%, whichever provides the larger benefit.

Ex. B, p. 1.  This language was repeated in a memorandum to employees dated July 30, 2008, attached to the complaint as Exhibit C.  It is substantially similar to the language contained in §19.11(e) of the Plan.  However, a later memorandum allegedly stated, "If you are offered a position with Ball, you will not be eligible for the +5/+5 enhancement upon the date of your separation from employment with MCC or at the time of our termination of employment with Ball."  Complaint, ¶49.  Whether the latter statement, based on defendants' interpretation of §19.11, was an erroneous misrepresentation is tied to the outcome of the litigation of Count One of the complaint.

Defendants argue that plaintiffs have failed to allege facts to show that they reasonably relied on the alleged misrepresentation in any way.  The source of the memorandum informing plaintiffs that they were not eligible for enhanced benefits is not revealed in the complaint, nor does the complaint show that these statements were made by a person or entity acting in a fiduciary capacity.  In addition, unlike the situation in James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 445-448 (6th Cir. 2002), where there was evidence that the employer induced employees to take early retirement or to resign in reliance on the misleading information, no such acts of reliance by the plaintiffs are alleged in this case.  The allegations in the complaint also demonstrate that plaintiffs did not rely on the statement that they were not entitled to benefits, and instead filed a claim for benefits under §19.11.  See Del Rio v. Toledo Edison Co., 130 Fed.Appx. 746, 751 (6th Cir. April 29, 2005)(finding that plaintiff did not satisfy the elements of a breach of fiduciary duty claim based on a material misrepresentation because she did not rely on

the employer's statement that she was not entitled to benefits, but instead sent a letter requesting benefits).

Plaintiffs also note that the "CHANGE IN CONTROL TALKING POINTS" memorandum also stated:

> Q. Does an acquiring Company have the right to eliminate the pension lump sum distribution or is that protected for at least three years?
> A. The available payment forms cannot be reduced and no available benefits, rights, or features can be eliminated during the 3-year period following a change in control as this would be considered a material change to the plan.

Ex. B, p. 1. However, as previously noted, there are no allegations in the complaint that the Plan has been amended to eliminate lump sum distribution. Rather, that benefit has only been suspended temporarily due to the requirements of §1056(g), which are beyond the defendant's control. The complaint also lacks any allegations as to any acts taken by plaintiffs in reliance on the above statement.

Plaintiffs' misrepresentation theory also fails on another ground. Plaintiffs' claim for breach of fiduciary duty is brought under §1132(a)(2). They have alleged no misrepresentations that caused injury to the Plan. Rather, they seek compensatory damages and other declaratory and equitable relief regarding alleged misrepresentations concerning their own entitlement to benefits. Because a cause of action under §1132(a)(2) permits recovery to inure only to the ERISA plan, not to individual beneficiaries, plaintiffs may not bring their individual misrepresentation claims under §1132(a)(2). See Varity Corp., 516 U.S. at 515 (noting that plaintiffs could not proceed on their claim for breach of fiduciary duty against employer who made misrepresentations because "that

provision ... does not provide a remedy for individual beneficiaries"; <u>Adcox v. Teledyne, Inc.</u>, 21 F.3d 1381, 1390 (6th Cir. 1994)(holding that claim for breach of fiduciary duty under §1132(a)(2) based on material misrepresentations was properly dismissed)(<u>overruled on other grounds</u>, <u>Winnett v. Caterpillar, Inc.</u>, 553 F.3d 1000 (6th Cir. 2009)); <u>Davis By and Through Farmers Bank & Capital Trust co. of Frankfort, Ky. v. Kentucky Finance Cos. Retirement Plan</u>, 887 F.2d 689, 695-96 (6th Cir. 1989)(individual estoppel claim based on misrepresentation could not be pursued under §1132(a)(2)). Rather, the appropriate vehicle for asserting individual claims of breach of fiduciary duty based on misrepresentations made by an employer is §1132(a)(3), <u>see</u> <u>Varity Corp.</u>, 516 U.S. at 510, although only equitable relief is available, not compensatory and punitive damages. <u>Mertens</u>, 508 U.S. at 255; <u>Allinder v. Inter-City Products Corp. (USA)</u>, 152 F.3d 544, 551-52 (6th Cir. 1998). Plaintiffs have not asserted a claim under §1132(a)(2).

The complaint fails to assert a viable claim for breach of fiduciary duty based on misrepresentations under §1132(a)(2).

<u>E. Defendants Anheuser-Busch InBev and Karrenbrock</u>

Defendants Anheuser-Busch InBev and Karrenbrock also request to be dismissed from Count Two on the ground that plaintiffs have failed to allege that these defendants were acting as fiduciaries or that they committed any breach of fiduciary duty. Plaintiffs allege in a conclusory fashion that Anheuser-Busch InBev was somehow involved in a scheme to deprive them of pension benefits in order to maximize profits from the sale of ABC subsidiary companies instead of having to fund those benefits. However, as previously

discussed, the complaint lacks any factual allegations as to whether or how Anheuser-Busch InBev exercised any control over the administration of the Plan or had any authority to decide eligibility for benefits. Under ERISA, a person or entity is a fiduciary only with respect to those aspects of the plan over which the person or entity exercises authority or control. Moore, 458 F.3d at 438. An employer who does not control or influence the decision to deny benefits is not the fiduciary with respect to denial of benefit claims. Id. The Summary identifies ABC as the Plan administrator. Ex. A, p. 27. The complaint also does not allege that Anheuser-Busch InBev had an obligation to fund the Plan, or that it failed to make Plan contributions which it was required to make. The October 8, 2009, memorandum concerning the lump sum option is on ABC letterhead.

The complaint also lacks facts sufficient to show that Anheuser-Busch InBev was responsible for any of the alleged misrepresentations. The July 30, 2008, memorandum referencing the involuntary termination benefit is on ABC letterhead, and the source of the later memorandum regarding plaintiffs' ineligibility for benefits is not disclosed. There are no facts sufficient to allege that Anheuser-Busch InBev was responsible for those communications. See Flanigan v. General Electric Co., 242 F.3d 78, 85 (2nd Cir. 2001)(acquiring company which was not a fiduciary when selling company provided information to employees concerning benefits owed no fiduciary duty to plaintiffs). The complaint does not specify who provided the memorandum containing the allegedly false statement concerning the enhanced retirement benefits referred to in ¶49. The complaint fails to allege any facts sufficient to demonstrate that Anheuser-Busch InBev was a fiduciary

26

of the Plan.

The complaint summarily alleges that defendant Karrenbrock denied plaintiffs' request for benefits without describing how he had the authority to do so.  The only other allegation concerning Karrenbrock was that he requested a legal opinion in August of 2008 in connection with the acquisition, an opinion which, according to plaintiffs, "ignored the plain language of the Plan[.]"  Complaint, ¶45c.  They do not allege that Karrenbrock was acting in a fiduciary capacity when he made arrangements to obtain the legal opinion.  Even if he was, plaintiffs do not allege, for example, that Karrenbrock intentionally conspired in bad faith with the attorney to secure an opinion that they both believed was legally incorrect.  Plaintiffs simply disagree with the legal opinion rendered.  This court would be loath to hold that a claim for breach of fiduciary duty may be asserted against a trustee for simply soliciting a legal opinion, even one which a court ultimately disagreed with, since this would discourage trustees from the often prudent course of seeking legal advice.

The court concludes, for these additional reasons, that the complaint fails to state a claim for breach of fiduciary duty against defendants Anheuser-Busch InBev and Karrenbrock.


IV. Conclusion

In accordance with the foregoing, defendants' partial motion to dismiss (Doc. No. 10) is granted.  Count Two is dismissed as to all defendants.  Count One is dismissed as to defendants Anheuser-Busch InBev and Jeff Karrenbrock.


It is so ordered.

27

Date: April 25, 2011            _____s/James L. Graham_____
                                James L. Graham
                                United States District Judge

28