IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Rusby Adams, Jr., et al.,

     Plaintiffs,

       v.                    Case No. 2:10-cv-826

Anheuser-Busch Companies,
Inc., et al.,

     Defendants.


OPINION AND ORDER

    This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. Plaintiffs Rusby Adams, Jr., Leslie Schell, Daniel Stewart and Kevin Jones are former employees of the Metal Container Corporation ("MCC"), a former subsidary of defendant Anheuser-Busch Companies, Inc. ("ABC"). As employees of MCC, plaintiffs were participants in the Anheuser-Busch Companies Pension Plan ("the Plan"). ABC was acquired by InBev, N.V., a Belgian beverage company, in 2008. Complaint, ¶1. MCC was later sold to Ball Corporation on or about October 1, 2009, and plaintiffs were then employed by Ball. See Complaint, ¶¶46-48, 55.

    At or around the time of the sale of MCC, plaintiffs made claims for benefits under §19.11 of the Plan, entitled "Change in Control." Under §19.11(d) of the Plan, the "Accrued Benefit of each Participant who is actively employed by a Participating Employer as of the date of a Change in Control shall be fully vested." Complaint, ¶24, Plan, §19.11(d); see also Angevine v. Anheuser-Busch Companies Pension Plan, No. 4:09-CV-1959(CEJ), 2010 WL 2835722 at *2 (E.D.Mo. July 16, 2010)(quoting the Plan). The

Plan further provided that during the three years following a change in control, the formulas for determining benefits and "the forms of payment available under the Plan shall not be reduced ... and no other benefits, rights and features ... available to Participants shall be eliminated." Plan, §19.11(e)(ii) and (iii). The Plan also states that the retirement benefit of any participant

> whose employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control shall be determined by taking into account an additional five (5) years of Credited Service and [for purposes of early retirement] an additional five (5) years of age, and shall in any event be at least fifteen percent (15%) larger than the Participant's Normal Retirement Benefit, Late Retirement Benefit, Early Retirement Benefit, as calculated without regard to this Section 19.11(f) as of the date of the Participant's employment with the Controlled Group ends; provided that nothing in this Section 19.11(f) shall cause acceleration of a Participant's Payment Date under the Plan.

Complaint, ¶25, Plan, §19.11(f). Plaintiffs' position was that because they were no longer employed by an ABC-affiliated company within three years of the acquisition of ABC, they had been "involuntarily terminated" within the meaning of §19.11(f). Complaint, ¶40.

Plaintiffs were notified on December 23, 2009, that their claims for benefits under this section were being denied because they had accepted employment with Ball Corporation. Complaint, ¶55. Plaintiffs appealed the denial of their benefits to the Plan Appeals Committee. Complaint, ¶59. On June 17, 2010, the appeal was denied by the Appeals Committee. Complaint, ¶63.

Plaintiffs then filed the instant action, which they seek to pursue as individuals and as representatives of a class of similarly situated former employees of ABC. Count One of the complaint asserted a claim for benefits pursuant to 29 U.S.C.

§1132(a)(1)(B). Count Two asserted a claim for breach of fiduciary duty under 29 U.S.C. §1132(a)(2). On April 25, 2011, an order was filed granting the defendants' motion to dismiss Count Two of the complaint, and to dismiss defendants ABC and Jeff Karrenbrock as defendants. The remaining defendants are the Plan, the Anheuser-Busch Companies Pension Plans Appeals Committee, and Anheuser-Busch InBev, N.V.

On June 29, 2011, plaintiffs filed a motion for class certification pursuant to Fed.R.Civ.P. 23. In that motion, plaintiffs requested certification of a class which included all Plan participants and beneficiaries who were employed by any of the "Controlled Group" of Anheuser-Busch-related companies that were sold to a buyer between November 18, 2008, and November 17, 2011. This proposed class would have included former employees of MCC as well as former employees of Busch Entertainment Corporation ("Busch Entertainment"). However, on March 6, 2012, plaintiffs filed an amended motion for class certification. Plaintiffs state in this motion that a former employee of Busch Entertainment has filed a class action complaint in the United States District Court for the Eastern District of Missouri, seeking to represent a class of former Busch Entertainment Plan participants. To avoid conflict between that action and the instant case, plaintiffs now seek certification of a class made up solely of former MCC plan participants and beneficiaries. The proposed class is defined as follows:

> All persons who were participants in or beneficiaries of the Anheuser-Busch Companies Pension Plan and the Supplement for the Anheuser-Busch Salaried Employees' Pension Plan (the "Plan") who were employed at any Metal Container Corporation plan within the "Controlled Group" of Anheuser-Busch-related companies that was sold to a

3

buyer outside the "Controlled Group" (the "Amended Proposed Class") at any time between November 18, 2008 and November 17, 2001 (the "Class Period").

## I. Class Certification Requirements

The prerequisites for the certification of a class action are as follows:

(a) **Prerequisites.**  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

  (1)   the class is so numerous that joinder of all members is impracticable;

  (2)   there are questions of law or fact common to the class;

  (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

  (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

A district court may certify a class only after "rigorous analysis" of the requirements of Rule 23.  <u>Sprague v. General Motors Corp.</u>, 133 F.3d 388, 397  (6th Cir. 1998) (citing <u>General Tel. Co. v. Falcon</u>, 457 U.S. 147, 161 (1982)).  No class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified, and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b).  <u>Id.</u> (citing <u>In re American Medical Systems, Inc.</u>, 75 F.3d 1069, 1079 (6th Cir. 1996)).

Plaintiffs are requesting the certification of a class under Fed.R.Civ.P. 23(b)(1), which permits certification where:

  (1)   prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed.R.Civ.P. 23(b)(1).

The burden is on the plaintiffs to establish their right to class certification. <u>Alkire v. Irving</u>, 330 F.3d 802, 820 (6th Cir. 2003). A district court may not inquire into the merits of the plaintiff's underlying claims. <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 178 (1974). However, a class "is not maintainable as a class action by virtue of its designation as such in the pleadings." <u>American Medical Systems</u>, 75 F.3d at 1079. Thus, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." <u>Falcon</u>, 457 U.S. at 160. The court may consider evidence presented by the parties on the maintainability of the class action. <u>Weathers v. Peters Realty Corp.</u>, 499 F.2d 1197, 1200 (6th Cir. 1974).


<u>II. Application of Rule 23 Criteria</u>

<u>A. Numerosity</u>

<u>1. Standards</u>

Rule 23(a)(1) requires that the class sought to be certified is so numerous that joinder of all members is impracticable. Although this requirement is commonly referred to as a "numerosity" requirement, the real issue is whether the plaintiffs seeking class

certification have demonstrated impracticability of joinder. <u>American Medical Systems</u>, 75 F.3d at 1079. There is no strict numerical test for determining impracticability of joinder. <u>Daffin v. Ford Motor Co.</u>, 458 F.3d 549, 552 (6th Cir. 2006). Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." <u>General Telephone Co. v. EEOC</u>, 446 U.S. 318, 330 (1980).

In the instant case, there are four named plaintiffs. Defendants have indicated that there are approximately sixty former MCC claimants who have exhausted their administrative remedies, <u>see</u> Defendant's Memorandum Contra, Doc. 35, p. 5, and there may be more class members who have not yet filed a claim for benefits. In <u>Becher v. Long Island Lighting Co.</u>, 164 F.R.D. 144 (E.D.N.Y. 1996), an ERISA case challenging the defendants' determination that certain employees had forfeited pension credit for years of service prior to their withdrawal of contributions, the court found that a class of 67 employees was sufficient to satisfy the numerosity requirement. <u>Id.</u> at 149 (citing <u>Consolidated Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995)(numerosity is presumed at a level of 40 members)).

The record also reveals that four MCC plants were sold to Ball in 2009. These plans were located in Columbus, Ohio, Fort Atkinson, Wisconsin, Rome, Georgia, and Gainesville, Florida. Complaint, ¶ 46. Plaintiff Rusby Adams is a former employee of the MCC plant in Columbus. Complaint, ¶ 5. Plaintiffs Leslie Schell and Daniel Stewart are former employees of the Gainesville plant. Complaint, ¶¶ 6-7. Plaintiff Kevin Jones is a former employee of the Fort Atkinson plant. Complaint, ¶ 8. The fact that class members live in widespread areas of the country is a factor that

may be considered in determining whether the numerosity requirement has been satisfied.  See <u>Turnage v. Norfolk Southern Corporation</u>, 307 Fed.Appx. 918, 921 (6th Cir. 2009); <u>Sessions v. Owens-Illinois, Inc.</u>, 267 F.R.D. 171, 174 (M.D.Pa. 2010).  Considering the number of class members and the fact that the class is geographically dispersed over a substantial portion of the country, the court finds that the requirements of Rule 23(a)(1) have been satisfied, and that joinder of all class members would be impracticable.

## 2. Exhaustion of Administrative Remedies

Defendants argue that MCC employees who have not yet exhausted their administrative remedies cannot be included in the proposed class.  Defendants do not contest that the four named plaintiffs and roughly sixty additional MCC employees have exhausted their administrative remedies.  These numbers alone are sufficient to satisfy the numerosity requirement.

Although ERISA does not explicitly require exhaustion of administrative remedies, the administrative scheme of ERISA requires participants to exhaust administrative remedies prior to bringing suit in federal court.  <u>Costantino v. TRW, Inc.</u>, 13 F.3d 969, 974 (6th Cir. 1994).  The purposes of exhaustion of administrative remedies include: to help reduce the number of frivolous lawsuits; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement and minimize the costs of settlement; to enhance the ability of plan trustees to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes, to correct their errors, and to interpret plan provisions; and to help assemble a factual record

which will assist a court in reviewing the fiduciaries' actions.

The Sixth Circuit has required named plaintiffs in a class action to exhaust their administrative remedies. See Hill v. Blue Cross and Blue Shield of Michigan, 409 F.3d 710 (6th Cir. 2005). However, the Sixth Circuit has not yet addressed the issue of whether exhaustion of administrative remedies is a prerequisite for all proposed class members, although the Sixth Circuit has decided in other contexts that only named plaintiffs must exhaust their administrative remedies. See Newsom v. Vanderbilt Univ., 653 F.2d 1100, 1106 (6th Cir. 1981)(to pursue class action under Hill-Burton Act against hospital for alleged failure to provide a reasonable volume of services to persons unable to pay, not every class member must exhaust administrative remedies; one is sufficient); Williams v. Tennessee Valley Auth., 552 F.2d 691, 692 (6th Cir. 1977)(private sector employee who has exhausted administrative remedies may maintain a class action under Title VII even though no other member of the class has exhausted administrative remedies)(citing Albemarle Paper Co. v. Moody, 422 U.S. 405, 414 n. 8 (1975)).

Most courts which have addressed the issue have concluded that exhaustion of administrative remedies is not a prerequisite to class membership in an ERISA action so long as the named plaintiffs have exhausted their administrative remedies. See Matz v. Household Int'l Tax Reduction Investment Plan, 232 F.R.D. 593, 597-598 (N.D.Ill. 2005)(requiring exhaustion only by named plaintiffs supports ERISA policies of encouraging claimants to pursue private remedies and developing a proper administrative record without requiring duplicative exhaustion by all unnamed class members), aff'd sub nom. In re: Household Int'l Tax Reduction Plan, 441 F.3d

8

500 (7th Cir. 2006); <u>Clarke v. Ford Motor Co.</u>, 220 F.R.D. 568, 576 (E.D.Wis. 2004)("To require all class members to exhaust administrative remedies would place an unnecessary procedural hurdle in the path of ERISA plaintiffs and, thus, contravene ERISA's goal of protecting the interests of participants in benefit plans by providing convenient access to the federal courts."), <u>vacated on other grounds</u>, 228 F.R.D. 631 (E.D.Wis. 2005); <u>Thomas v. SmithKline Beecham Corp.</u>, 201 F.R.D. 386, 395 (E.D.Pa. 2001); <u>Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Trust</u>, 134 F.Supp.2d 189, 211 (D.Mass. 2001); <u>but see</u> <u>Coffin v. Bowater Inc.</u>, 228 F.R.D. 397, 404 (D.Maine 2005)(requiring exhaustion as a prerequisite to class membership, without explanation). <u>See also</u> 2 Herbert B. Newberg & Alba Conte, <u>Newberg on Class Actions</u> §5:15 (4th ed. 2002)("When exhaustion of administrative remedies is a precondition for suit, the satisfaction of this requirement by the class plaintiff normally will avoid the necessity for each class member to satisfy this requirement independently.").

In <u>In re Household Int'l Tax Reduction Plan</u>, 441 F.3d 500 (7th Cir. 2006), the Seventh Circuit noted that exhaustion of administrative remedies under an ERISA plan "'furthers the goals of minimizing the number of frivolous lawsuits, promoting non-adversarial dispute resolution, and decreasing the cost and time necessary for claim settlement ... and enables the compilation of a complete record.'" <u>Id.</u> at 501 (quoting <u>Gallegos v. Mount Sinai Medical Center</u>, 210 F.3d 803, 808 (7th Cir. 2000)). The court then stated:

> These purposes determine how much exhaustion to require
> in a class action. If the complaint or subsequent
> filings adequately identify the class members' claims and

> demonstrate that they are indeed very similar to those of
> the named plaintiff, the defendant knows what he is
> facing and can make efforts to settle the full array of
> claims.  In such a case, requiring exhaustion by the
> individual class members would merely produce an
> avalanche of duplicative proceedings and accidental
> forfeitures, and so is not required.

Id. at 501-02.  "This is emphatically the case when dealing with

class actions under ERISA, where, there being no statutory

requirement of exhaustion, the district court has discretion to

require no exhaustion by anyone." Id. at 502.  The Seventh Circuit

concluded that the district court did not abuse its discretion in

requiring only the named plaintiff to exhaust, "given the

similarity of the plaintiff's claim to the claims of the unnamed

class members[.]" Id.

This court agrees with the reasoning in In re Household Int'l

Tax Reduction Plan.   The claims asserted by the named plaintiffs

on behalf of themselves and the proposed class members center on

whether their employment was "involuntarily terminated" within the

meaning of §19.11(f) of the Plan in light of the fact that they

obtained employment with the purchaser of the MCC plants.  Thus,

the claims of the named plaintiffs are very similar to those of the

unnamed class members.  This is particularly true in light of the

proposed amendment which now restricts the class to former MCC

employees.  This is not a frivolous lawsuit.  The named plaintiffs

and approximately sixty other MCC employees have now exhausted

their administrative remedies and have been denied benefits.  This

administrative exhaustion was sufficient to promote the consistent

treatment of claims, to provide defendants with an adequate

opportunity to settle plaintiffs' claims, and to permit the Plan

administrator   to  consider  the  claims,  interpret  the  Plan

provisions, and correct any errors. The administrative proceedings which have already occurred are sufficient to provide this court with an adequate administrative record. In light of the nature of this case, the court will not require exhaustion of administrative remedies as a prerequisite for class membership.

Plaintiffs argue that, in any event, exhaustion of administrative remedies by class members who have not yet done so would be futile. Exhaustion of administrative remedies in ERISA cases is excused where resort to the administrative procedure would be futile or the remedy would be inadequate. <u>Fallick v. Nationwide Mutual Ins. Co.</u>, 162 F.3d 410, 419 (6th Cir. 1998). The standard for adjudging futility is whether "a clear and positive indication of futility can be made." <u>Id.</u>

In this case, the named plaintiffs and approximately sixty other former MCC employees have exhausted their administrative remedies under the Plan and have been unsuccessful in arguing their interpretation of §19.11(f). In <u>Dalesandro v. International Paper Co.</u>, 214 F.R.D. 473 (S.D.Ohio 2003), a case factually similar to the instant case, the claimants sought severance benefits from their former employer when the paper mill at which they were employed was sold to another company, which then employed the claimants. The court noted that the administrator's decision interpreting the plan was one of general applicability to all persons affected by the sale, and found that it would have been futile for those employees who had not yet filed a claim for benefits to do so. <u>Id.</u> at 483 ("As with the plaintiffs who did file claims, the question of their entitlement to severance benefits turned on the plan administrator's interpretation of 'Terminated' and 'Termination.'").

11

In this case as well, plaintiffs' eligibility for benefits turned on the Plan administrator's interpretation of the phrase "involuntarily terminated" contained in §19.11(f). After rejecting plaintiffs' interpretation of the Plan provisions over sixty times, "[i]t is clear that the Plan administrator would not have reached a different decision had the non-filers filed individual claims for severance benefits." Id.; see also Thomas, 201 F.R.D. at 395 ("Given the defendants' apparent uniform interpretation of the plan documents, requiring each of the proposed class members to exhaust his or her administrative remedies would be futile."). Thus, even if the court were to conclude that unnamed plaintiffs in an ERISA action must also exhaust their administrative remedies, any further exhaustion in this case would be futile.

B. Commonality

Rule 23(a)(2) requires that there must be "questions of law or fact common to the class." In order to find commonality, the precise nature of plaintiff's claims must be examined. Reeb v. Ohio Dep't of Rehabilitation and Correction, 435 F.3d 639, 644 (6th Cir. 2006). Not every common question will suffice, because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." Sprague, 133 F.3d at 397. Rather, the case must involve "a common issue the resolution of which will advance the litigation." Id.; Alkire, 330 F.3d at 820. Commonality requires the plaintiffs to demonstrate that the class members have suffered the same injury. Wal-Mart Stores, Inc. v. Dukes, ___ U.S. ___, 131 S.Ct. 2541, 2551 (2011). Their claims must depend upon "a common contention" which "is capable of classwide resolution–which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

The commonality test "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." American Medical Systems, 75 F.3d at 1083. Class certification is "particularly appropriate" when there are issues involved which are common to the class as a whole, and when these issues turn on questions of law applicable in the same manner to each member of the class. Falcon, 457 U.S. at 154-156. The commonality requirement is satisfied if there is a single factual or legal question common to the entire class. Wal-Mart Stores, 131 S.Ct. at 2556; Powers v. Hamilton County Public Defender Commission, 501 F.3d 592, 619 (6th Cir. 2007). Commonality does not require that the plaintiff's claims be identical to those of other class members, and the "'mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.'" Powers, 501 F.3d at 619 (quoting Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988)).

There is at least one common question in the instant case, that being the meaning of §19.11 of the Plan. Plaintiffs' position is that because they were no longer employed by an ABC-affiliated company within three years of the acquisition of ABC, they were "involuntarily terminated" within the meaning of §19.11(f). Complaint, ¶40. This issue is central to the claims of all class members. See Sessions, 267 F.R.D. at 174-175 (commonality requirement was satisfied in action where claimants were seeking benefits under plan as a "Terminated Retiree" following sale of

company); <u>Dalesandro</u>, 214 F.R.D. at 483 (commonality requirement satisfied where all claimants were seeking severance benefits upon sale of mill as "Terminated" employees under the terms of the plan).

There are also common issues of fact, as the amended proposed class consists entirely of former MCC employees who became employed by Ball after its purchase of the MCC facilities.  It is reasonable to assume that all of the proposed class members then became participants in benefit plans provided by Ball.  Defendants note that under the administrator's interpretation of the Plan, former MCC employees do not qualify for the enhanced benefits if they were offered substantially similar employment with substantially similar benefits by Ball, and that this would require an inquiry into the employment of each class member.  However, if plaintiffs prevail on their threshold argument that the Plan administrator's interpretation of the Plan's contractual language is erroneous, and that they automatically became eligible for the enhanced pension benefits upon termination of their employment with ABC, then the nature of their jobs with Ball and the type of salaries and benefits they receive there will be irrelevant to the resolution of their claims for benefits.  If they do not prevail on this issue, then there are unlikely to be many factual disputes concerning the circumstances of each  class member's employment with Ball.  The fact that there may be other questions relating to eligibility for benefits which are unique to particular class members does not defeat commonality.  <u>Powers</u>, 501 F.3d at 619 (the fact that questions peculiar to each individual class member remain after the common questions of the defendant's liability have been resolved does not preclude class action).

The court finds that the commonality requirement is satisfied in this case.

## C. Typicality

The typicality requirement under Rule 23(a)(3) limits the class claims to those fairly encompassed by the named plaintiff's claims. General Tel. Co. v. EEOC, 446 U.S. at 330. The "commonality and typicality requirements of Rule 23(a) tend to merge." Rutherford v. City of Cleveland, 137 F.3d 905, 909 (6th Cir. 1998). A claim is typical if it arises from the same event or course of conduct giving rise to the claims of other class members and is based on the same legal theory. Powers, 501 F.3d at 618; Senter v. General Motors Corp., 532 F.2d 511, 525 n. 31 (6th Cir. 1976). To be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law. Id. at 525. However, the representative's interests must be aligned with those of the class, so that by pursuing his own claims, the named plaintiff will also advance the interests of the class members. American Medical Systems, 75 F.3d at 1082; see also Sprague, 133 F.3d at 399 ("The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.").

In this case, the claims of the named plaintiffs are aligned with those of the proposed class members. The named plaintiffs and the members of the proposed amended class are all former employees of MCC. Their claims arise from the same event, the sale of MCC to Ball, and concern the same legal issue, whether they are entitled to enhanced pension benefits as a result of the termination of their employment with ABC following that sale. See Dalesandro, 214

F.R.D. at 483.  If the named plaintiffs are successful in arguing their interpretation of the Plan, then this will likewise advance the interests of the class members.  The court finds that the typicality requirement is satisfied in this case.

D. Adequacy of Representation

Rule 23(a) also requires that the class representative will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997).  A class representative must be a part of the class and possess the same interest and suffer the same injury as the class members.  Id.

There are two criteria for determining whether the representation of the class will be adequate: (1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.  American Medical Systems, 75 F.3d at 1083.  The adequacy-of-representation requirement is usually satisfied if the commonality and typicality requirements are met.  See Amchem Products, 521 U.S. at 626 n. 20 (noting that the adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a)).

The named plaintiffs have common interests with the unnamed members of the proposed amended class.  They seek to recover enhanced pension benefits to which the class members would also be entitled.  As noted above, the court has found that the commonality

16

and typicality requirements have been met in this case.  There is nothing in the record which suggests to the court that the named plaintiffs might have some conflict of interest which would preclude them from fairly, adequately and vigorously protecting and prosecuting the interests of the other class members.  Plaintiffs have also provided information concerning the qualifications of plaintiffs' counsel to represent the class.  Defendants do not argue that counsel are unqualified to represent the proposed class in this action, and the court finds that plaintiffs' counsel are qualified to represent the proposed class.  The court finds that the adequacy of representation factor is satisfied in this case.

E. Rule 23(b) Requirements

1. Rule 23(b)(1)(A)

Plaintiffs are requesting the certification of a class under Rule 23(b)(1).  Rule 23(b)(1)(A) permits certification where prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

Some courts have held that a Rule 23(b)(1)(A) action should not be certified where the suit is one for compensatory damages.  See, e.g., Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1193 (9th Cir. 2001)(noting that Rule 23(b)(1)(A) certification requires more than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others); Cohen v. Office Depot, Inc., 204 F.3d 1069, 1078 n. 7 (11th Cir. 2000); In re Dennis Greenman Securities Litigation, 829 F.2d 1539, 1545 (11th Cir. 1987)(noting that Rule

23(b)(1)(A) certification is for cases seeking injunctive and declaratory relief, such as "suits to invalidate a bond issue, to declare the rights and duties of riparian owners or landowners, or to abate a common nuisance" and that a suit seeking compensatory damages would not qualify).

A class action is appropriate under Rule 23(b)(1)(A) when the party is obliged by law to treat the members of the class alike. See Amchem Products, 521 U.S. at 614 (Rule 23(b)(1)(A) applies to "cases where the party is obliged by law to treat the members of the class alike"). For example, in Larionoff v. United States, 533 F.2d 1167, 1182 n. 36 (D.C.Cir. 1976), the court found that a class of enlisted personnel seeking certain re-enlistment bonuses from the navy qualified for certification under Rule 23(b)(1)(A) due to a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the government, because the government was required to treat all class members alike in awarding re-enlistment bonuses.

In First Federal of Michigan v. Barrow, 878 F.2d 912, 919 (6th Cir. 1989), the court concluded that class certification under Rule 23(b)(1)(A) was appropriate because inconsistent adjudications in actions brought by a bankruptcy trustee against various debtors may have established incompatible standards of conduct by placing him into a possible conflict of position in seeking the satisfaction of individual claims. In contrast, the court in Pipefitters Local 636 Insurance Fund v. Blue Cross Blue Shield of Michigan, 654 F.3d 618, 633 (6th Cir. 2011), found that certification under Rule 23(b)(1)(A) was not appropriate in an action under ERISA for breach of fiduciary duty because the defendant had separate agreements, and therefore, a distinct fiduciary status, with each of the class

18

member funds, and therefore a judgment in an action by one fund would not subject the defendant to conflicting affirmative duties regarding the other funds.

In <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 514 (1996), an ERISA case, the Supreme Court noted that the common law of trusts "requires a trustee to take impartial account of the interests of all beneficiaries." <u>See also</u> <u>Stvartak v. Eastman Kodak Co.</u>, 945 F.Supp. 1532, 1546 (M.D.Fla. 1996)("The Court understands the argument that a plan administrator is obliged to carefully screen payments under existing plans to assure the uniform treatment of all plan participants.").

Courts in ERISA actions have concluded that certification under Rule 23(b)(1)(A) was appropriate. <u>See</u> <u>Barnes v. AT & T Pension Benefit Plan-Nonbargained Program</u>, 270 F.R.D. 488, 496 (2010)(holding that class could be certified in ERISA action for benefits under Rule 23(b)(1)(A) because there was a risk that individual litigation would result in different conclusions); <u>Alday v. Raytheon Co.</u>, 619 F.Supp.2d 726, 736 (D.Ariz. 2008)(certifying class under Rule 23(b)(1)(A) in ERISA action, noting that "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner" and that Rule 23(b)(1)(A) "comes into play when a party is obligated by law to treat the members of a class in like manner); <u>In re J.P. Morgan Chase Cash Balance Litigation</u>, 242 F.R.D. 265, 275-76 (S.D.N.Y. 2007)(certifying class under Rule 23(b)(1)(A) where failure to certify could result in incompatible standards of conduct for the administrator of the plan); <u>Becher</u>, 164 F.R.D. at 153 (certifying ERISA action challenging forfeiture of pension credits under Rule 23(b)(1)).

In this case, individual actions might produce inconsistent adjudications concerning the meaning of §19.11. This could result in incompatible standards of conduct for the Plan administrator. Plaintiffs and the proposed class members are former employees of MCC. They are similarly situated participants in the Plan who are claiming benefits under the same Plan provisions. The Plan administrator has an obligation under ERISA to treat all similarly situated participants, such as the proposed class members, in a consistent manner.

Plaintiffs do not seek compensatory damages in this case. Rather, this is an action "brought by Plaintiffs in their individual capacity and on behalf of all others similarly situated to recover, enforce, and/or clarify their right to benefits" under the Plan pursuant to 29 U.S.C. §1132(a)(1)(B). Complaint, ¶ 14. A single plan or contract is at issue in this case. The proposed class members are all participants in the same Plan. The right to benefits on the part of each and every class member hinges on whether the Plan administrator's interpretation of the contractual provisions of the Plan can be upheld. This action has been brought to obtain a declaration concerning the rights of the class member Plan participants and the obligations of the Plan administrator under §19.11 of the Plan. Any monetary relief in the form of contractual benefits under the terms of the Plan would be dependent upon and ancillary to a declaration by the court regarding the proper interpretation of the Plan and whether the Plan administrator's interpretation of the Plan's provisions was arbitrary and capricious. See Barnes, 270 F.R.D. at 496; McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust, 268 F.R.D. 670, 678 (W.D.Wash. 2010). Therefore, certification is

appropriate under Rule 23(b)(1)(A).

## 2. Rule 23(b)(1)(B)

Plaintiffs also request certification of a class under Rule 23(b)(1)(B). That rule permits certification where prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.[1]  Under this subdivision, it is not necessary for the nonclass judgment to be technically dispositive of the interests of the other members of the putative class, but it must, as a practical matter, conclude the interests of those members. Larionoff, 533 F.2d at 1182 n. 36. Rule 23(b)(1)(B) does not come into play simply because of the stare decisis or precedential effect of a decision rendered in an action brought by an individual class member. Employers Insurance of Wausau v. Federal Deposit Insurance Corp., 112 F.R.D. 52, 56 (E.D.Tenn. 1986). However, the practical effect test may be met where the party opposing the class is required to treat all class members alike, because in such a case, the adjudication of the claims of one class member may set the standard as to how the other class members are treated. See Larionoff, 533 F.2d at 1182 n. 36.

As noted above, an ERISA trustee is required to treat similarly-situated plan participants in a consistent manner.

_____

[1] One common type of Rule 23(b)(1)(B) class, the "limited fund" action, is not present here.  The record before the court does not establish that the Plan lacks sufficient assets to satisfy the claims of all class members.  See Ortiz v. Fibreboard Corp., 527 U.S. 815, 834-836 (1999).

Courts in ERISA actions have concluded that certification under Rule 23(b)(1)(B) was appropriate. See Barnes, 270 F.R.D. at 496(holding that class could be certified in ERISA action for benefits under Rule 23(b)(1)(B); the resolution of named plaintiff's claim would be dispositive of other plan participants because ERISA requires plan administrators to treat all similarly situated participants in a consistent manner); In re J.P. Morgan Chase, 242 F.R.D. at 275-76 (certifying class under Rule 23(b)(1)(B) where failure to certify could affect the interest of other plan members). In the instant case, the resolution of the named plaintiffs' claims would likely be dispositive of the claims of other plan participants because ERISA requires the Plan administrator to treat all similarly situated participants in a consistent manner. See Barnes, 270 F.R.D. at 496. Certification is appropriate under Rule 23(b)(1)(B).

## III. Conclusion

In accordance with the foregoing, the court concludes that plaintiffs have met their burden of showing that the prerequisites for the certification of a class action pursuant to Rule 23(a) and Rule 23(b)(1)(A) and (B) have been satisfied in this case. Accordingly, plaintiffs' amended motion for class certification (Doc. 57) is granted. The previous motion for class certification (Doc. 24) is moot. The court hereby certifies the following class consisting of:

> All persons who were participants in or beneficiaries of
> the Anheuser-Busch Companies Pension Plan and the
> Supplement for the Anheuser-Busch Salaried Employees'
> Pension Plan (the "Plan") who were employed at any Metal
> Container Corporation plan within the "Controlled Group"
> of Anheuser-Busch-related companies that was sold to a

buyer outside the "Controlled Group" (the "Amended Proposed Class") at any time between November 18, 2008 and November 17, 2001 (the "Class Period").

The court notes that under Fed.R.Civ.P. 23(c)(2)(A), in cases where a class is certified under Rule 23(b)(1), "the court may direct appropriate notice to the class." Notice to a Rule 23(b)(1) class is discretionary, but may be advisable. The parties are directed to file memoranda on this issue. Both parties are to submit memoranda on or before April 16, 2012. Responses to the memoranda are due on or before April 27, 2012.

Date: March 28, 2012   _____s/James L. Graham_____

        James L. Graham

        United States District Judge