```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION
```

Rusby Adams, Jr., et al.,

    Plaintiffs,

    v.                                    Case No. 2:10-cv-826

Anheuser-Busch Companies,
Inc., et al.,

    Defendants.

                        OPINION AND ORDER

This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. Plaintiffs Rusby Adams, Jr., Leslie Schell, Daniel Stewart and Kevin Jones are former employees of the Metal Container Corporation ("MCC"), a former subsidiary of defendant Anheuser-Busch Companies, Inc. ("ABC"). As employees of MCC, plaintiffs were participants in the Anheuser-Busch Companies Pension Plan ("the Plan"). ABC was acquired by InBev, N.V., a Belgian beverage company, in 2008. Complaint, ¶1. MCC was later sold to Ball Corporation on or about October 1, 2009, and plaintiffs were then employed by Ball. See Complaint, ¶¶46-48, 55.

At or around the time of the sale of MCC, plaintiffs made claims for benefits under §19.11 of the Plan, entitled "Change in Control." The Plan provided that the retirement benefit of any participant

> whose employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control shall be determined by taking into account an additional five (5) years of Credited Service and [for purposes of early retirement] an additional five (5) years of age, and shall in any event be at least fifteen percent (15%) larger than the Participant's

> Normal Retirement Benefit, Late Retirement Benefit, Early Retirement Benefit, as calculated without regard to this Section 19.11(f) as of the date of the Participant's employment with the Controlled Group ends; provided that nothing in this Section 19.11(f) shall cause acceleration of a Participant's Payment Date under the Plan.

Complaint, ¶25, Plan, §19.11(f).  Plaintiffs filed claims for benefits under the Plan, arguing that because they were no longer employed by an ABC-affiliated company within three years of the acquisition of ABC, they had been "involuntarily terminated" within the meaning of §19.11(f).  Complaint, ¶40.  Plaintiffs were notified on December 23, 2009, that their claims for benefits under this section were being denied because they had accepted employment with Ball Corporation.  Complaint, ¶55.  Plaintiffs appealed the denial of their benefits to the Plan Appeals Committee.  Complaint, ¶59.  On June 17, 2010, the appeal was denied by the Appeals Committee.  Complaint, ¶63.

Plaintiffs then filed the instant action, asserting a claim for benefits pursuant to 29 U.S.C. §1132(a)(1)(B) in Count One of the complaint.  Count Two, which asserted a claim for breach of fiduciary duty under 29 U.S.C. §1132(a)(2), was dismissed by order of this court on April 25, 2011.  The remaining defendants are the Plan, the Anheuser-Busch Companies Pension Plans Appeals Committee, and Anheuser-Busch InBev, N.V.  This matter is before the court on plaintiffs' motion to supplement the administrative record and to compel production of documents.

I. Background

The record reveals that plaintiff Adams filed a request for benefits under §19.11 by letter dated September 25, 2009. Doc. 38, Ex. B-1.  His request for benefits was denied by notice dated December 23, 2009. Doc. 38, Ex. B-2.  On February 18, 2010, Adams

2

sent a letter to the Plan which indicated his intent to appeal the denial of benefits. Doc. 38, Ex. B-3. With this notice, he included a July 30, 2008, memorandum to ABC salaried employees which described the provisions of §19.11. Complaint, Ex. C. Adams requested production of any documents or evidence related to this memorandum.

Adams also attached a memorandum dated October 8, 2009, which informed employees that due to the poor performance of the stock market in 2008, the Plan was underfunded, and that certain forms of lump sum payments would not be available, although the amount of accrued benefits was not affected. Complaint, Ex. E. Adams inquired whether the "future pension payments owed to participants" referred to in the memorandum included the claims of former MCC employees, as he believed that if this was the case, "this is another example that strongly supports my claim." Ex. B-3, p. 3. Adams requested production of any documents or evidence relating to this memorandum. Finally, Adams also requested production of all documents relating to "any enhancements to any Plan participants' benefit pursuant to Section 19.11(f) between January 1, 2001 and today[.]" Ex. B-3, p. 3.

On April 16, 2010, the Plan responded to Adams' request for documents. The Plan provided copies of documents and evidence related to Adams' claim, including his employment records and the relevant Plan provisions. Doc. 38, Ex. B-4. The Plan also provided a copy of the relevant portions of advice from legal counsel which was relied upon in making the benefit determination. Ex. B-4, p. 1. Defendants have submitted the declaration of Ken Hardebeck, a member of the Plan Appeals Committee which reviewed Adams' claim. Doc. 38, Ex. C, ¶ 3. Mr. Hardebeck identified his

3

handwritten notes of a meeting of the Appeals Committee which referred to this legal memorandum. Ex. C, ¶ 4. He stated that the "legal document" referred to in the notes is a redacted legal memorandum from counsel to ABC. Ex. C, ¶ 5. Mr. Hardebeck stated that the Appeals Committee only saw the redacted version of the document. Ex. C, ¶ 6.

As to the request for documents relating to any benefits paid under §19.11(f), the Plan responded that those documents contained confidential information concerning individual determinations and would not be provided. However, the Plan did provide a report dated February 16, 2010, which contained statistical information concerning the number of employees by business unit who had received enhanced benefits under the Plan. The Plan indicated that none of those individuals had continued employment in the same or similar position pursuant to a sale agreement between ABC and a third party. Ex. B-4, p. 2.

As to the July 30, 2008, memorandum, the Plan indicated that the memorandum simply summarized the provisions of §19.11(f), and that no other documents related to or reflecting this memorandum had any relevance to the denial of Adams' claim. Ex. B-4, p. 2. In regard to the October 8, 2009, memorandum, the Plan stated that the pension liabilities upon which the September 30, 2009, certification of funded status was based did not include any liability for the payment of any benefits pursuant to §19.11(f) to any employees of MCC who were offered employment with Ball Corporation. The Plan indicated that any documents related to that memorandum were not relevant to Adams' claim. Ex. B-4, pp. 2-3.

By letter dated May 27, 2010, Adams objected to the inclusion of the legal memorandum in the administrative record on the ground

4

that it was not evidence, and further stated that if parts of the memorandum were included in the record, then the redacted parts should be included as well. Doc. 38, Ex. B-5, p. 1. Adams objected to the refusal of the Plan to provide additional information concerning the 1,227 Plan participants who received benefits under §19.11(f). Ex. B-5, p. 3. He also objected to the Plan's refusal to provide additional information concerning the July 30, 2008, memorandum and the October 8, 2009, memorandum, arguing that he should have the opportunity to review the actuarial calculations. Ex. B-5, pp. 3-4.

On June 17, 2010, the Plan Appeals Committee issued a decision denying Adams' appeal. Doc. 38, Ex. B-6. The decision noted that the Committee reviewed the opinion of outside counsel in connection with the denial of Adams' claim. Ex. B-6, p. 2. The decision also stated that the Committee was advised that since the change in control, all participants whose employment was transferred to a successor entity in connection with the sale of assets or an entity have been treated in a uniform and consistent manner, and the Plan Administrator has consistently determined that participants in those situations are not entitled to the enhanced benefit of §19.11(f). Ex. B-6, p. 2.

II. Standards

Count One asserts a claim under 29 U.S.C. §1132(a)(1), seeking enhanced pension benefits under §19.11(f) of the Plan. A challenge to the denial of benefits is reviewed de novo unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan grants such discretion to the plan

5

administrator, then the administrator's decision is reviewed under the "arbitrary and Capricious" standard of review.  <u>Farhner v. United Transportation Union Discipline Income Protection Program</u>, 645 F.3d 338, 342 (6th Cir. 2011).

In the instant case, §14.5 of the Plan provides that the Plan administrator has "duties and powers" which include the power to "construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of any benefits hereunder[.]"  Doc. 38, Ex. A, §14.5(a).  The Plan also provides that the "Plan Administrator shall exercise such authority and responsibility as it deems appropriate in order to comply with ERISA and governmental regulations issued thereunder."  Ex. A., §14.4.  Thus, the arbitrary and capricious standard of review applies in this case.

When reviewing an administrator's decision under the arbitrary and capricious standard, this court "may consider only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms" and this court's "review is thus limited to the administrative record."  <u>Schwalm v. Guardian Life Ins. Co. of America</u>, 626 F.3d 299, 308 (6th Cir. 2010)(citing <u>Wilkins v. Baptist Healthcare Sys., Inc.</u>, 150 F.3d 609, 618 (6th Cir. 1998)).  "The administrative record in an ERISA case includes all documentation submitted during the administrative appeals process because this information was necessarily considered by the plan administrator in evaluating the merits of the claimant's appeal."  <u>Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston</u>, 419 F.3d 501, 511 (6th Cir. 2005).

Discovery is normally inappropriate in ERISA benefit actions.

6

However, the district court may permit discovery when evidence is sought "in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." Wilkins, 150 F.3d at 619.  In regard to the latter, the Supreme Court has held that a plan administrator's conflict of interest "must be weighed as a factor in determining whether there is an abuse of discretion." Firestone Tire & Rubber, 489 U.S. at 115.  A conflict of interest exists where a plan administrator both evaluates claims for benefits and pays benefit claims. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 112 (2008).  "That does not mean, however, that discovery will automatically be available any time the defendant is both the administrator and the payor under an ERISA plan." Johnson v. Connecticut General Life Ins. Co., 324 Fed.Appx. 459, 467 (6th Cir. 2009)(noting that "matters outside the administrative record are ordinarily not relevant to the court's review of an ERISA benefit decision").  Likewise, a "mere allegation of bias is not sufficient to permit discovery under Wilkins' exception." Putney v. Med. Mut. of Ohio, 111 Fed.Appx. 803, 807 (6th Cir. 2004).  The district court retains discretion to decide when to allow such discovery. Bell v. Ameritech Sickness and Accident Disability Benefit Plan, 399 Fed.Appx. 991, 998 (6th Cir. 2010).

III. Motion to Supplement and Compel

A. Legal Memorandum

    Plaintiffs first argue that either the redacted legal memorandum should be stricken from the administrative record, or that the unredacted version be produced.  The court finds that the redacted memorandum is properly a part of the administrative

record, as it is a document which was considered by the Plan Administrator and the Appeals Committee in evaluating the merits of the claim. Kalish, 419 F.3d at 511. The affidavit of Ken Hardebeck, a member of the Plan Appeals Committee which reviewed Adams' claim, indicates that the Appeals Committee never had an unredacted version of the memorandum. The memorandum was the result of a request for legal advice on several different topics made by ABC to its counsel, and therefore the memorandum was not limited to a discussion of the meaning of §19.11(f). Defendants argue that the information not included in the redacted version is protected from disclosure under the attorney-client privilege. Plaintiffs argue that the privilege was waived when a redacted version of the memorandum was provided to the Appeals Committee.

This court need not resolve the privilege issue. As stated above, in determining plaintiffs' claims for benefits, this court must review the administrative record to determine if the Appeals Committee acted arbitrarily and capriciously in denying benefits. The redacted version of the memorandum is a part of the administrative record because it was considered by the Appeals Committee in making the benefits determination. The Plan's decision to deny benefits was upheld by the Appeals Committee, and only the information before the Appeals Committee is relevant to the benefits determination. The unredacted version was never seen or considered by the Appeals Committee. Therefore, even assuming, as plaintiffs suggest, that the unredacted version might include information which would reveal ABC's strategies for the Plan in light of the InBev take-over, any information not disclosed to the Plan could not possibly show any bias on the part of the Appeals Committee.

The memorandum is an opinion on the legal issues in the instant case. For purposes of deciding whether the Appeal Committee's decision was arbitrary and capricious, "seeking the advice of competent counsel before entering into the morass of employee benefits law would seem to be eminently reasonable behavior." Baylor Heating & Air Conditioning, Inc. v. Federated Mutual Ins. Co., 987 F.2d 415, 419 n. 6 (7th Cir. 1993). The fact that the Plan relied on legal advice which plaintiffs view as erroneous does not equate with bias. Requiring employers to disclose unrelated sensitive information because they unwittingly sought legal advice on multiple topics which was provided in a single document could potentially discourage plan administrators from seeking legal advice.

Further, the Plan's reliance on legal advice in denying benefits is simply irrelevant to the central issue of whether the Plan had a contractual obligation to pay benefits to the plaintiffs. See Baylor, 987 F.2d at 419. Although reliance on counsel's advice may be a factor in deciding a breach of fiduciary duty claim, see Bussian v. RJR Nabisco, Inc., 223 F.3d 286, 301 (5th Cir. 2000), it is not a defense to a breach of contract claim, see Baylor, 987 F.2d at 419 (noting that the fact that plaintiff believed, based on counsel's advice, that it had no contractual obligation to make payments to pension fund did not change the contractual nature of the obligation).

It will be this court's function to decide whether the Plan's interpretation of §19.11(f) was arbitrary and capricious by interpreting the Plan provisions using general principles of contract law, beginning with the plain language of the Plan. Farhner, 645 F.3d at 343. The court expects that at the merits

stage of this case, the defendants will be advancing legal arguments similar to those contained in the legal memorandum, and plaintiffs will make opposing legal arguments in response.  The fact that defendants' arguments were previously included in a redacted legal memorandum which was provided to the Plan would not entitle those arguments to any additional weight.  The court will not order the production of the unredacted legal memorandum.

B. Memorandum of July 30, 2008

    The next request to supplement concerns the July 30, 2008, memorandum to ABC employees.  Adams submitted this document (attached to the complaint as Ex. C) to the Plan during his appeal, and therefore this document is a part of the administrative record. In regard to the pension plan, this document states that "if a participant in the SEPP is involuntarily terminated within three years after a change in control, the participant's benefit will be determined based on five additional years of age and credited service or by increasing the benefit by 15 percent, whichever provides the larger benefit."  Ex. C, p. 1.  Plaintiffs now seek the production of any documents which related to this memorandum or its preparation.

    The Plan declined to provide these documents, noting that the memorandum simply summarized the provisions of §19.11(f), and that no other documents related to or reflecting this memorandum had any relevance to the denial of Adams' claim.  This court agrees that the document cannot be interpreted as being anything more than a brief summary of the provisions of §19.11(f).  Even assuming that the unknown author of the memorandum or other persons involved in its preparation, over a year before the benefits determinations in this case, were of the opinion that employees in plaintiffs'

position would be entitled to §19.11(f) benefits, those opinions are irrelevant.  It is the decision of the Appeals Committee which is under review in the instant case.

In seeking to supplement the administrative record, plaintiffs rely on regulations applicable in ERISA cases.  To ensure that a claimant has a reasonable opportunity for a full and fair review of an adverse benefit determination, an ERISA plan must provide on appeal

> that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.  Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section[.]

29 C.F.R. §2560.503-1(h)(2)(iii).  The regulations further state in relevant part:

> (8) A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
>   (i) Was relied upon in making the benefit determination;
>   (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination[.]

29 C.F.R. §2560.503-1(m)(8)(i) and (ii).

Plaintiffs basically argue that any document they requested during the administrative process which was in the sole possession of ABC should be deemed to have been "submitted" or "generated" during that appeal process.  They contend that because the Appeals Committee members were employees of ABC, they had access to all records of ABC, and therefore the documents they requested should be considered part of the administrative record.  They further argue that the Plan Administrator does not have the authority to

11

decide what documents are relevant to a benefits claim, essentially asserting that claimants ought to have the authority to make their own determination of relevancy after having the opportunity to inspect whatever records they demand.

The documents requested by Adams during the appeal were not "relied upon in making the benefit determination." They likewise were not "submitted" by Adams or "generated" by the appeal process. The fact that the members of the Appeal Committee were also ABC employees does not mean that they had unlimited access to all business records of ABC. Employers "who are also plan sponsors wear two hats: one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer." Hunter v. Caliber System, Inc., 220 F.3d 702, 718 (6th Cir. 2000). The Plan is administered through the HR Service Center, the Retirement Plans Department and the Pension Plan Appeals Committee. The fact that ABC declined to provide the Appeals Committee with an unredacted version of the legal memorandum indicates that the Plan did not have the capability of obtaining ABC business records simply because they were requested by a Plan participant.

Further, the Plan Administrator is vested with discretion over matters concerning the administrative record. Under the heading "Records and Reports," the Plan provides that the "Plan Administrator shall exercise such authority and responsibility as it deems appropriate in order to comply with ERISA and governmental regulations issued thereunder." Doc. 38, Ex. A, §14.4. The Plan does not place participants or claimants in control of the administrative process. Putting claimants in the position of being able to inspect whatever records they request under the guise of making their own relevancy determinations could unduly prolong the

administrative process and result in innumerable disputes over the disclosure of documents containing irrelevant, sensitive, confidential and proprietary business information.

Plaintiffs argue that the Appeals Committee engages in forbidden "cherry picking" when it determines that evidence is irrelevant. The concept of "cherry picking" originated in a case involving disability benefits, where an insurer picked one aberrant medical evaluation from the administrative record and provided it to a "neutral" reviewer for evaluation. See Spangler v. Lockheed Martin Energy Sys., Inc., 313 F.3d 356, 361-362 (6th Cir. 2002). That case does not stand for the proposition that a plan is required to consider items which were irrelevant or unavailable. See Schwalm, 626 F.3d at 311. Here, the Appeals Committee did not ignore Adams' request for the documents, but rather considered his request and determined that the requested documents were not relevant to his claim for benefits. That decision is subject to the review of this court, like any other decision of a plan administrator made during the review process. This court finds that the Appeal Committee did not act arbitrarily or capriciously in concluding that any background documents concerning the July 30, 2008, memorandum requested by Adams, assuming they exist, were not relevant to the benefits decision. Plaintiffs' request to supplement the record with documents related to the memorandum of July 30, 2008, is denied.

C. Memorandum of October 8, 2009

Adams also requested documents relating to the October 8, 2009, memorandum concerning the underfunded status of the Plan. The October memorandum was submitted by Adams to the Plan, and is therefore a part of the administrative record. This memorandum

13

stated that the Plan was between eighty and sixty percent funded as of September 30, 2009, "[d]ue largely to market declines during 2008" and "a large number of lump sum payouts under the 2008 Enhanced Retirement Program and benefit accruals resulting from the restructuring." Complaint, Ex. E, p. 1. The memorandum explains that lump sum payments would be limited to fifty percent of the amount that could be payable without the restriction. Ex. E, p. 2. The memorandum further notes that "the rules established by the federal government take precedence over certain payment options provided under the Plan" and that the "restrictions apply to a specific form of payment only; the accrued benefit you have earned is not affected." Ex. E, p. 1. The purpose of this memorandum was simply to explain to participants the constraints imposed on the Plan under the Pension Protection Act of 2006 and 29 U.S.C. §1056(g)(3), as discussed in this court's order of April 25, 2011. See Doc. 20.

Adams inquired in his letter whether the pension benefits were included in the calculations which resulted in this memorandum. He stated, "If so, this is another example that strongly supports my claim." Doc. 38, Ex. B-3, p. 3. Adams was informed by the Plan that the actuarial review performed on September 30, 2009, which led to the October memorandum did not take into account any benefits claimed by MCC employees, and therefore, the requested documents did not support, and were irrelevant to, Adams' claim. Doc. 38, Ex. B-4, pp. 2-3. Adams insisted in response that he was entitled to review the actuarial data himself. Doc. 38, Ex. B-5, pp. 3-4.

The court finds that the Plan did not act arbitrarily and capriciously in concluding that the actuarial information sought by

14

Adams was irrelevant to his claim for benefits.  Plaintiffs have advanced no reason as to why they believe that the Plan's information concerning the actuarial calculations was inaccurate.  Conjecture and a mere allegation of bias are "insufficient to 'throw open the doors of discovery' in an ERISA case." Likas v. Life Ins. Co. of North America, 222 Fed.Appx. 481, 486 (6th Cir. 2007)(quoting Putney, 111 Fed.Appx. at 806-07).

Nothing in the record before the court indicates that the Appeals Committee relied on the October memorandum.  It is possible that plaintiffs now seek to verify whether MCC benefits were in fact included in the actuarial calculations and, if so, whether their inclusion tipped the Plan into underfunded status.  Plaintiffs could then argue that the Appeals Committee had a motive to deny them benefits.  However, the Appeals Committee, which was informed that the benefits claimed by MCC employees were not included in the actuarial calculations, knew that the Plan was underfunded even if any benefits claimed by MCC employees were disregarded.  Therefore, regardless of whether any examination of the records by plaintiffs would disclose that MCC benefits were or were not included, plaintiffs are still free to argue that the underfunded status of the Plan influenced the decision of the Appeals Committee.  Insofar as the possible inclusion of MCC benefits in the calculations might suggest that the person performing the calculations believed that MCC employees might possibly be entitled to benefits, this is not relevant to the benefits decision of the Appeals Committee.  It is the decision of the Appeals Committee that is under review, not the conjectural conclusions of other persons.  The court concludes that discovery on this issue is not warranted.

15

D. Documents Relating to §19.11(f) Benefits

During the appeal process, Adams requested documents relating to any benefits paid under §19.11(f). Doc. 38, Ex. B-3, p. 3. The Plan responded that those documents contained confidential information concerning individual determinations and would not be provided. However, the Plan did provide a report dated February 16, 2010, which contained statistical information concerning the number of employees by business unit who had received enhanced benefits under the Plan. The Plan indicated that its records showed that none of those individuals had continued employment in the same or similar position pursuant to a sale agreement between ABC and a third party. Doc. 38, Ex. B-4, p. 2. By letter dated May 27, 2010, Adams objected to the refusal of the Plan to provide additional information concerning the 1,227 Plan participants who received benefits under §19.11(f). Doc. 38, Ex. B-5, p. 3. The decision denying Adams' appeal stated that the Committee was "advised that, since November 18, 2008, when the Change in Control occurred, all Participants whose employment was transferred to a successor entity in connection with the sale of assets or an entity have been treated in a uniform and consistent manner. The Plan Administrator has consistently determined that Participants in those situations are not entitled to the enhanced benefit of §19.11(f). Doc. 38, Ex. B-6, p. 2.

Plaintiffs now seek discovery of, and the supplementation of the administrative record with, the administrative records of all 1,227 Plan participants who have received benefits under §19.11(f), so that plaintiffs can verify whether those participants were similarly situated to the plaintiffs. It is true that "ERISA requires plan administrators to treat all similarly situated

16

participants in a consistent manner." Alday v. Raytheon Co., 619 F.Supp.2d 726, 736 (D.Ariz. 2008). In this case, the Plan maintains that similarly-situated employees have been treated in a uniform manner in the award of benefits under §19.11(f). The Plan maintains that its records show that no individuals who were awarded §19.11(f) benefits had continued employment in the same or similar position pursuant to a sale agreement between ABC and a third party. The record includes information that over sixty MCC employees who have submitted claims for benefits under §19.11(f) were denied benefits. Thus, it appears that the claims filed by MCC employees have been dealt with consistently.

Plaintiffs vaguely assert that some employees in other units received benefits even though they started new employment immediately following their termination from ABC. However, these conclusory allegations are insufficient to support an order which would allow plaintiffs access to the confidential employment records of over a thousand other employees, and significantly expand the administrative record in this case beyond the actual record considered by the Appeals Committee. Such discovery would greatly raise the level of resources which the court and the parties would need in order to address issues arising during the course of that discovery, and would significantly increase the cost of litigation. The court is also reluctant to authorize such discovery in light of the fact that plaintiffs' claims to benefits under §19.11(f) hinge in the first instance on the reasonableness of the Plan's interpretation of that provision, not on the individual circumstances of each employee. The court finds that the Plan did not act arbitrarily and capriciously in denying disclosure of the administrative records of non-MCC employees, and

the motion for discovery of those records is denied.

IV. Conclusion

In accordance with the foregoing, the court concludes that plaintiffs have failed to show that the requested discovery would be relevant to any alleged procedural deficiency or to show bias, and the motion to supplement the administrative record and to compel (Doc. 37) is denied.

Date: March 28, 2012              s/James L. Graham
                                  James L. Graham
                                  United States District Judge

18